# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

NEW YORK WHEEL OWNER LLC,

                        Plaintiff,

v.

MAMMOET-STARNETH LLC,

                        Defendant.

Case No. 17-cv-4026-JMF

---

## MEMORANDUM IN SUPPORT OF DEFENDANT
## MAMMOET-STARNETH LLC'S MOTION TO DISMISS

---

DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020-1089
Philip R. White
phil.white@dentons.com
Anthony B. Ullman
anthony.ullman@dentons.com
Jonathan S. Jemison
jonathan.jemison@dentons.com
Telephone: (212) 768-6700
Facsimile: (212) 768-6800

*Attorneys for Defendant*
*Mammoet-Starneth LLC*

**Table of Contents**

Page

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS PERTINENT TO THE CHALLENGED COUNTS ......................... 3

THE GOVERNING LEGAL STANDARD .............................................................................. 5

ARGUMENT ........................................................................................................................... 6

     I.     NYW'S CLAIMS FOR FRAUDULENT INDUCEMENT SHOULD BE
           DISMISSED. ......................................................................................................... 6

           A.     NYW's Fraud in the Inducement Claims Plead Only that the DBT
                   Never Intended to Perform its Contractual Obligations, which Fails
                   to State a Claim for Fraud as a Matter of Law ........................................... 7

     II.     NYW'S CLAIMS FOR SUBMISSION OF FALSE APPLICATIONS
           FOR PAYMENT SHOULD BE DISMISSED. .................................................... 15

     III.     NYW'S REQUEST FOR A DECARALORY JUDGMENT OF "NO
           BREACH" SHOULD BE DISMISSED. ............................................................. 18

     IV.     NYW'S CLAIM FOR UNJUST ENRICHMENT SHOULD BE
           DISMISSED. ....................................................................................................... 23

CONCLUSION ...................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aero Tech Aviation Design, LLC v. Otto Aviation Group, LLC*,
No. 15-cv-1373-EFM-TJJ, 2017 WL 1397545 (D. Kan Apr. 18, 2017) ................................20

*Applera Corp. v. Mich. Diagnostics, LLC*,
594 F. Supp. 2d 150 (D. Mass. 2009) ....................................................................................20

*Ardis Health, LLC v. Nankivell*,
No. 11 Civ. 5013(NRB), 2012 WL 5290326 (S.D.N.Y. Oct. 23, 2012) ..............................7, 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................... *passim*

*In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*,
991 F. Supp. 2d 479 (S.D.N.Y. 2014) ....................................................................................17

*Baril v. JPMorgan Chase Bank, N.A.*,
No. 14 Civ. 02365(JGK), 2014WL 6684055, at *3 (S.D.N.Y. Nov. 25, 2014) ...............12, 14

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................... *passim*

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*,
98 F.3d 13 (2d Cir. 1996) ..................................................................................................7, 8

*Broadcom Corp. v. Qualcomm Inc.*,
No. 08-cv-1829 WQH (LSP), 2009 WL 684835 (S.D. Cal. Mar. 12, 2009) ..........................20

*Center for Bio-Ethical Reform, Inc. v. Black*,
13–CV–581–A, 2017 WL 550645 (S.D.N.Y. Feb. 10, 2017) ..........................................22, 23

*Chevron Corp. v. Naranjo*,
667 F.3d 232 (2 Cir. 2012) ....................................................................................................19

*Chill v. Gen. Elec. Co.*,
101 F.3d 263 (2d Cir. 1996) ..................................................................................................13

*Clifford R. Gray, Inc. v. LeChase Constr Sers., LLC*,
819 N.Y.S.2d 182 (App. Div. 2006) .......................................................................................24

*DeBlasio v. Merrill Lynch & Co.*,
No. 07-CIV-318 RJS, 2009 WL 2242605 (S.D.N.Y. July 27, 2009) ......................................17

*Deshawn E. by Charlotte E. v. Safir*,
    156 F.3d 340 (2d Cir. 1998)...................................................................................22

*DiFolco v. MSNBC Cable L.L.C.*,
    622 F.3d 104 (2d Cir. 2010)......................................................................................6

*Elsevier, Inc. v. Grossman*,
    77 F. Supp. 3d 331, 338-39, 352 (S.D.N.Y. 2015) ..................................................8

*Fierro v. Gallucci*,
    No. 06-CV-5189 (JFB)(WDW), 2010 WL 1223122 (E.D.N.Y. Mar. 24, 2010),
    *aff'd*, 423 F. App'x 17 (2d Cir. 2011) ...................................................................11

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004)....................................................................................18

*Frota v. Prudential–Bache Sec., Inc.*,
    639 F. Supp. 1186 (S.D.N.Y. 1986)........................................................................17

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
    640 F. Supp. 2d 300 (S.D.N.Y. 2009).....................................................................18

*Gianni Sport Ltd. v. Metallica*,
    No. 00-CIV.- 0937 (MBM), 2000 WL 1773511 (S.D.N.Y. Dec. 4, 2000) ......................22, 23

*Golden Archer Invs., LLC v. Skynet Fin. Sys.*,
    No. 11 Civ. 3673(RJS), 2012 WL 123989 (S.D.N.Y. Jan. 3, 2012).........................15

*Golden v. Zwickler*,
    394 U.S. 103 (1969)..................................................................................................19

*Goldman v. Metro. Life Ins. Co.*,
    841 N.E.2d 742 (N.Y. 2005)....................................................................................24

*Greenstreet Fin., L.P. v. CS-Graces, LLC*,
    No. 07 Civ. 8005 (KNF), 2009 WL 323520 (S.D.N.Y. Feb 4, 2009) .....................11

*In re Harbinger Capital Partners Funds Investor Litigation*,
    No. 12-CV-1244 AJN, 2015 WL 1439520 (S.D.N.Y. Mar. 30 2015).....................17

*Harsco Corp. v. Segui*,
    91 F.3d 337 (2d Cir. 1996).......................................................................................12

*Hillwood Development Co., LLC v. Related Companies, Inc.*
    No. 04-CV-1100-L, 2006 WL 1140472, at *3 (N.D. Tex. April 28, 2006) ......................20, 22

*Hindsight Sols., LLC v. Citigroup Inc.*,
    53 F. Supp. 3d 747, 773 (S.D.N.Y. 2014) ..............................................................11

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
    907 N.E.2d 268 (N.Y. 2009)....................................................................................24

*Integra FX3X Fund, L.P. v. Deutsche Bank, AG*,
    No. 14-CV-8400 (JPO), 2016 WL 1169514 (S.D.N.Y. Mar. 22, 2016)..................................8

*JBCHoldings NY, LLC v. Pakter*,
    931 F. Supp. 2d 514 (S.D.N.Y. 2013)....................................................................16

*John Wiley & Sons, Inc. v. Visuals Unlimited, Inc.*,
    No. 11–CV–5453–CM, 2011 WL 5245192 (S.D.N.Y. Nov. 2, 2011) ............................22, 23

*Kassman v. KPMG LLP*,
    925 F. Supp.2d 453 (S.D.N.Y. 2013)................................................................22, 23

*Kaye Dentistry, PLLC v. Turchin*,
    No. 13-CV-5306 (JMF), 2014 WL 2649976 (S.D.N.Y. June 13, 2014) ...............................14

*Krantz v. Chateau Stores of Canada Ltd.*,
    683 N.Y.S.2d 24 (App. Div. 1998) ......................................................................11

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006)........................................................................13, 18

*Leung v. Law*,
    387 F. Supp. 2d 105 (E.D.N.Y. 2005) ...................................................................17

*Lightfoot v. Union Carbide Corp.*,
    110 F.3d 898 (2d Cir.1997)........................................................................23, 24

*Makarova v. U.S.*,
    201 F.3d 110 (2d Cir. 2000)............................................................................6

*Marcavage v. City of New York*,
    689 F.3d 98 (2d Cir. 2012)........................................................................21, 22

*Mariah Re Ltd. v. American Family Mut. Ins. Co.*,
    52 F. Supp. 3d 601, 623 (S.D.N.Y. 2014) ..............................................................22

*Matsumura v. Benihana Nat'l Corp.*,
    542 F. Supp. 2d 245 (S.D.N.Y. 2008)...................................................................17

*Matthew v. RCN Corp.*,
    No. 12 Civ. 0185(JMF), 2012 WL 5834917 (S.D.N.Y. Nov. 14, 2012) ...............................21

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007)....................................................................................19

*Mid–Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*,
    418 F.3d 168 (2d Cir. 2005)...................................................................................24

*In re MSR Hotels & Resorts, Inc.*,
    No. 13-11512 (SHL), 2013 WL 5716897 (S.D.N.Y. Bankr. Oct. 1, 2013)............17

*National Union Fire Ins. Co. of Pittsburgh, PA. v. International Wire Group, Inc.*,
    No. 02-Civ.-10338 (SAS), 2003 WL 21277114 (S.D.N.Y. June 2, 2003) ......................22, 23

*New Paradigm Software Corp. v. New Era of Networks, Inc.*,
    107 F. Supp. 2d 325 (S.D.N.Y. 2000)...................................................................24

*Nike, Inc. v. Already, LLC*,
    663 F.3d 89 (2d Cir. 2011)......................................................................................19

*Owen Equipment & Erection Co. v. Kroger*,
    437 U.S. 365 (1978)..................................................................................................6

*Peck v. Baldwinsville Cent. School Dist.*,
    351 Fed. Appx. 477 (2d Cir. 2009)........................................................................22

*Qube Films Ltd. v. Padell*,
    No. 13-CV-8405 (AJN), 2016 WL 881128 (S.D.N.Y. Mar. 1, 2016) ......................7

*Refined Sugars Inc. v. Hazou*,
    No. 85 CIV. 7028 (SWK), 1987 WL 19024 (S.D.N.Y. Oct. 20 1987)...................18

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004).....................................................................................17

*S.E.C. v. Credit Bancorp, Ltd.*,
    738 F. Supp. 2d 376 (S.D.N.Y. 2010)....................................................................22

*Slinin v. Shnaider*,
    No. 15-CV-9674 (RJS), 2017 WL 464426 (S.D.N.Y. Feb. 2, 2017) ......................18

*Williams v. Calderoni*,
    No. 11 Civ. 3020(CM), 2012 WL 691832 (S.D.N.Y. Mar. 1, 2012)......................16

*Wilton v. Seven Falls Co.*,
    515 U. S. 277 (1995).................................................................................................6

*Windstream Services, LLC v. BMG Rights Management (US) LLC*,
    No. 16-CIV-5015, 2017 WL 1386357 (S.D.N.Y. Apr. 17, 2017) ..........................19

*Wynn v. AC Rochester*,
    273 F.3d 153 (2d Cir. 2001).....................................................................................12

**Statutes**

28 U.S.C. § 2201(a) .........................................................................................6, 19, 22, 23

Fed. R. Civ. P.
   8...................................................................................................................................13
   9...................................................................................................................................13
   9(b) ..................................................................................................................... *passim*
   12(b)(1) .....................................................................................................1, 6, 21, 23
   12(b)(6) ............................................................................................................. *passim*

**Other Authorities**

Article III of the United States Constitution .............................................................2, 19

Defendant Mammoet-Starneth LLC (the "Design Build Team," or "DBT") respectfully submits this memorandum in support of its motion to dismiss the claims asserted in Counts 2, 8, 9 and 11 of the Complaint herein pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1]

## Preliminary Statement

This motion is directed to four of the eleven counts set forth in the Complaint, which generally alleges various claims relating to a Design Build Agreement, dated as of March 4, 2014, between the parties, as amended (the "DBA") for the design and erection of a giant observation wheel on Staten Island. The subject counts are those for: fraudulent inducement (Count 8); false submission, by the DBT, of applications for payment under the DBA (Count 2); a declaratory judgment of "no breach" of the DBA by plaintiff (Count 9); and unjust enrichment (Count 11). All are deficient as a matter of law, and should be dismissed.

In Count 8, New York Wheel Owner LLC ("NYW") asserts that the DBT fraudulently induced NYW's predecessor to enter into two amendments to the DBA. However, NYW alleges only that, in entering into the amendments, the DBT falsely represented its intention to comply with their terms, which sounds, if at all, only in contract and does not give rise to an independent claim for fraud. Further, even if otherwise actionable, NYW's allegations of fraudulent inducement consist of conclusory assertions and formulaic recitations of the elements of a fraudulent inducement claim, and fail to plead factual content that would allow a court to draw the reasonable inference that any actual fraudulent inducement occurred -- thus leaving the fraudulent inducement claims possibly "conceivable," but not "plausible". NYW has accordingly

---

[1] Also submitted herewith is the Declaration of Jonathan S. Jemison, dated August 11, 2017 ("Jemison Decl.").

failed to state a claim under the standards articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and has further failed to plead its fraudulent inducement claims with the particularity required by Fed. R. Civ. P. 9(b).

In Count 2, NYW asserts that it is entitled to terminate the DBA on the ground that the DBT submitted eight applications for payment under the DBA that were "intentionally … falsified," in violation of the DBT's contractual obligations.  Here too, NYW's pleadings are wholly conclusory and devoid of any factual content that would raise the claim of intentional falsification above the speculative level.  Also, because these claims allege intentional falsification, they are subject to the heightened pleading requirements of Rule 9(b) -- but come nowhere close to meeting that standard.

In Count 9, NYW asks for a declaratory judgment that it is not in breach of any of its myriad obligations under the DBA.  However, the count fails to identify any obligation that NYW contends it has been, or imminently will be, accused of breaching, and thus fails to show that a concrete dispute exists as to whether NYW has breached those unspecified obligations.  As such, Count 9 does not present an actual case or controversy, but rather is a bare request for an advisory opinion, and outside this Court's subject matter jurisdiction under Article III of the Constitution.  Also, the declaratory judgment requested in Count 9 applies, if at all, only with respect to past, as opposed to prospective, breaches by NYW, which renders it dismissible on both Constitutional (lack of standing) and discretionary grounds.

In Count 11, NYW alleges that, in some of its applications for payment, the DBT overstated the percent of the work completed, and that NYW is entitled to recover any overpayments on unjust enrichment grounds.  However, the subject matter of the DBT's applications for payment is dealt with in Article X of the DBA.  New York law is clear that, in

this circumstance, NYW's recourse, if any, is under the DBA and a claim for unjust enrichment will not lie.

For these reasons, Counts 2, 8, 9 and 11 of the Complaint should be dismissed.

## Statement of Facts Pertinent to the Challenged Counts

The facts relevant to the instant motion, as alleged by NYW and indicated in the documents referred to in the Complaint, are summarized as follows:

On March 5, 2014, NYW's predecessor, as "Developer," and the DBT entered into a design-build agreement. (Compl. ¶¶ 2, 34; a copy of the Design Build Agreement is attached as Ex. A to Jemison Decl.) Under that agreement, the DBT agreed to design and construct a giant observation wheel on city land leased to NYW's predecessor. (*Id*. ¶¶ 22, 34.)

The parties' agreement was amended twice. The First Amendment to Design Build Agreement, referred to as "CAR 1," was entered into on December 11, 2014. (Compl. ¶ 92; copy attached as Ex. B to the Jemison Decl.) The Second Amendment to Design Build Agreement, referred to as "CAR 2," was entered into on May 18, 2015. (*Id*. ¶ 100; copy attached as Ex. C to Jemison Decl.)

As indicated in the Complaint, after work on the project began, disputes arose. On May 30, 2017, NYW filed the Complaint, which asserts 11 separate counts. This motion addresses 4 of them -- Counts 2, 8, 9 and 11. Chronologically, the alleged facts underlying Count 8 arose first, followed by those underlying Counts 2 and 11.

Count 8 concerns the two contract amendments, CAR 1 and CAR 2, which modified the rights and obligations of both parties under the design-build agreement as originally executed. Of relevance here, NYW contends that each of the amendments provided, among other things, for the DBT to deliver certain design/engineering drawings by the dates specified therein. (*See* Compl. ¶¶ 88, 92, 101, 102; Jemison Decl. Ex. B, at 2; Jemison Decl. Ex. C, at 5.) NYW alleges

that the DBT failed to deliver the documents by the dates due under CAR 1 and CAR 2, respectively. (Compl. ¶¶ 94, 278.) NYW further alleges that, at some unspecified times during the negotiations leading up to CAR 1 and CAR 2, the DBT represented that it was "close" to completing the subject documents and that the documents would be ready "soon." (Compl. ¶¶ 91, 98, 99.) It also alleges that, at the times it entered into CAR 1 and CAR 2, the DBT "knew or should have known" that it would not be able to complete them by the respective due dates provided for therein. (Compl. ¶¶ 92, 107.) In Count 8, NYW alleges that the DBT fraudulently induced NYW's predecessor to enter into CAR 1 and CAR 2 by falsely promising that the design/engineering documents would be provided by the dates due thereunder when it knew that it "could not or would not" deliver the documents until "much later." (*Id*. ¶¶ 270-78.)

Counts 2 and 11 concern certain Applications for Payment (or "AFPs") submitted by the DBT. Pursuant to Article X of the DBA, the DBT was to submit periodic "Applications for Payment," based on the percent of work actually completed, as measured against a contractual "Schedule of Values." (Jemison Decl. Ex. A, §§ 10.1, 10.2, 10.7.1; Compl. ¶ 52.) Both Counts 2 and 11 allege that, in certain of its Applications for Payment, the DBT overstated the percentage of work reported as complete. NYW also alleges that such submission of "false" Applications for Payment was a "deliberate measure" designed either to obtain unauthorized payments or, if NYW declined to pay, to allow the DBT to claim that NYW was in breach. (Compl. ¶ 179.) In Count 2, NYW alleges that the DBT overstated the percentage of work complete in all of its AFPs 13 through 20, and that such overstatement constituted intentional falsification by the DBT. (Compl. ¶¶ 229-30.) In Count 11, NYW seeks recovery of the alleged "overstated"

amounts, and an associated declaratory judgment,[2] on grounds of unjust enrichment.

In Count 9, NYW alleges that "[a]n actual, present and existing controversy has arisen between NYW and the DBT regarding whether NYW is in breach of its obligations under the [DBA]" and requests entry of "judgment declaring that NYW is not in breach of its obligations under the [DBA]." (Compl. ¶ 283-84.) The Count provides no further detail as to which provisions of the DBA NYW is said to have breached or when and how any specific claims of breach were or will be asserted against it. The Count also contains no allegation that NYW is at risk of claims of breach, by the DBT, based on NYW's continuing or future performance.

## The Governing Legal Standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations sufficient to "state a claim for relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted). While the well-pled facts contained in a complaint are assumed to be true, courts are not bound to accept as true mere "'labels and conclusions.'" *Id.* (*quoting Twombly*, 550 U.S. at 555). Thus, a pleading that offers only "'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* Further, even if well-pled, the allegations of a complaint must contain factual content that "nudges[s the plaintiff's] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, and "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," *Iqbal*, 556 U.S. at 679, and are also compatible with lawful conduct, *id*. at 680; *Twombly*, 550 U.S. at 566, the complaint is legally inadequate and

---

[2] The declaratory judgment sought in Count 8 mirrors the declaratory judgment sought in the last clause of Count 6. (*See* Compl. ¶¶ 264, 299.)

must be dismissed.[3]

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is properly granted where the district court lacks constitutional power to adjudicate the claim asserted. *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). "It is a fundamental precept that federal courts are courts of limited jurisdiction," *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978), and, on a Rule 12(b)(1) motion, the plaintiff has the burden of proving, by a preponderance of the evidence, that subject-matter jurisdiction exists. *Makarova*, 201 F.3d at 113.[4] Even if subject matter jurisdiction over a requested declaratory judgment exists, a court may, on a 12(b)(1) motion, decline to exercise it. *See Wilton v. Seven Falls Co.*, 515 U. S. 277, 286 (1995) (Declaratory Judgment Act confers on federal courts "unique and substantial discretion in deciding whether to declare the rights of litigants").

### Argument

For the following reasons, NYW's claims for fraudulent inducement (Count 8), submission of false applications for payment (Count 2), a declaratory judgment of "no breach" (Count 9) and unjust enrichment (Count 11) should be dismissed, with prejudice.

## I.   NYW'S CLAIMS FOR FRAUDULENT INDUCEMENT SHOULD BE DISMISSED.

In Count 8 of the Complaint, NYW alleges that the DBT fraudulently induced it into CAR 1 and Car 2 by falsely representing that certain engineering drawings would be delivered to NYW by the delivery dates for those documents set out in Car 1 and CAR 2, respectively.

---

[3] In ruling on a Rule 12(b)(6) motion, a Court may consider documents that, while not attached to or incorporated by reference in the complaint, are integral to it. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A document is integral to the complaint "where the complaint 'relies heavily upon its terms and effect'…." *Id*. (citations omitted).

[4] In determining whether subject matter exists, a court may "refer to evidence outside of the pleadings." *Id.*

This Count fails to state a claim on two separate grounds. First, it fails to allege anything more than a false promise to perform a contractual obligation, which does not state a claim for fraud (as opposed to breach of contract) as a matter of law. Second, the allegations underlying Count 8, including the allegations concerning matters subject to the pleading requirements of Fed. R. Civ. P. 9(b), are, at most, threadbare and conclusory recitals of the standard elements of a fraud cause of action and present no factual content supporting an inference that any misconduct occurred.

### A. NYW's Fraud in the Inducement Claims Plead Only that the DBT Never Intended to Perform its Contractual Obligations, which Fails to State a Claim for Fraud as a Matter of Law.

It is firmly established under New York law that an alleged false statement of intent to perform under a contract, without more, does not give rise to an action in fraud. *See, e.g., Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996) ("[I]intentionally-false statements by Beladino indicating his intent to perform under the contract … [are] not sufficient to support a claim of fraud under New York law."); *Qube Films Ltd. v. Padell*, No. 13-CV-8405 (AJN), 2016 WL 881128, at *3 (S.D.N.Y. Mar. 1, 2016) ("A fraud claim should be dismissed ... when the only fraud alleged is that the defendant was not sincere when it promised to perform under the contract.") (citation omitted); *Ardis Health, LLC v. Nankivell*, No. 11 Civ. 5013(NRB), 2012 WL 5290326, at *7 (S.D.N.Y. Oct. 23, 2012) ("Under New York law, 'general allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support a fraud claim.'") (citation omitted).

Rather, to state a claim for fraud[5] that exists separately from a claim for breach of a related contract, a plaintiff must (i) demonstrate a legal duty separate from the duty to perform

---

[5] The general elements of a fraud or fraudulent inducement claim are set out at p. 12 below.

under the contract; (ii) identify a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages. *Bridgestone/Firestone*, 98 F.3d at 20. With respect to collateral or extraneous fraudulent misrepresentations, New York law is clear that misrepresentations of a party's intent to perform matters covered by the contract as written do not qualify as collateral or extraneous. *See id.* (intentionally-false statements "indicating [an] intent to perform under the contract" not collateral to the contract); *Integra FX3X Fund, L.P. v. Deutsche Bank, AG*, No. 14-CV-8400 (JPO), 2016 WL 1169514, at *5 (S.D.N.Y. Mar. 22, 2016) (alleged misrepresentations that "addressed Deutsche Bank's future actions on 'common topics' with the written agreement," namely the future calculation of "Net Open Position" and the circumstances in which a margin call would be made, not collateral to the contract); *Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 338-39, 352 (S.D.N.Y. 2015) (defendants' alleged misrepresentation that they would not take actions prohibited by contract not collateral); *Ardis Health*, 2012 WL 5290326, at *7 (alleged misrepresentations of intent to make Nankivell an equal equity partner not collateral to the parties' alleged partnership agreement).

Applying these principles, NYW's claims for fraudulent inducement must be dismissed. Section 5 of CAR 1 called for the DBT to deliver a "permit-ready" set of documents to NYW by December 31, 2014, and a "construction-ready" set of documents by March 2, 2015. (Jemison Decl. Ex. B, at 2.) Section 6 of CAR 2 states that the DBT was to deliver documents required for the application of the Building Permit by July 1, 2015. (Jemison Decl. Ex. C, at 5.) NYW alleges (Compl. ¶¶ 94, 278) that these delivery dates were ultimately not met -- which is in fact

the subject of its breach of contract claim set out in Count 4 of the Complaint ("Failure to Deliver Timely Engineering Drawings").[6]

In Count 8 of the Complaint, NYW alleges that the DBT "knowingly and falsely represent[ed]" that it would deliver the documents referred to above by their contractual due dates at times when the DBT "knew that it could not or would not" meet those delivery obligations, and that NYW entered into CAR 1 and CAR 2 based on those representations. (Compl. ¶¶ 270, 271, 273-77; *see also id.* ¶¶ 88, 92-93, 101, 107-08.)  Thus, NYW's fraudulent inducement claims are predicated, exclusively, on alleged false statements of intent to perform under a contract -- which fail to state a cause of action for fraud as a matter of law.  *See* pp. 7-8 above.

Nor does the Complaint contain any other allegations that would allow NYW to avoid dismissal on this ground.  There is no allegation that the DBT owed NYW any legal duty separate from a duty to perform under contract, and, likewise, no allegation that, as a result of the alleged fraudulent inducement, NYW incurred special damages that were caused by the alleged misrepresentation and unrecoverable as contract damages.[7]

There also is no allegation of an actionable fraudulent misrepresentation collateral or extraneous to CAR 1 or CAR 2.  The Complaint does, to be sure, allege that, during the negotiations (a) leading to CAR 1, the DBT represented that it was "close to finally completing" the documents that would, under CAR 1, be due by December 31, 2014, (b) leading to CAR 2,

---

[6] The DBT disputes that it breached any contractual obligations under the DBA, including CAR 1 and CAR 2, but that issue is not before the Court on this motion.

[7] Quite the contrary -- the only damages alleged in Count 8 are lost profits (which are barred by the consequential damages waiver in Section 19.20 of the DBA) and other damages allegedly resulting from "the DBT's breach of the contract and its [implied] duty to act in good faith."  (Compl. ¶ 279.)

the DBT represented that it was "close to finally completing" the documents that would, under

CAR 2, be due by July 1, 2015, and (c) the DBT represented that that it would be ready to

provide the engineering documents "soon".  (Compl. ¶¶ 91-92, 98, 99.)  But that does not help

NYW, for four reasons:

First, there is no allegation that those representations were false or known to be false

when made.  The Complaint alleges that the representations were made at some points prior to

the executions of CAR 1 and CAR 2, respectively (but does not allege when during those

negotiations they were supposedly made).  While NYW alleges that the DBT "knew or should

have known" that it could not meet the drawing delivery requirements at the times that CAR 1

and CAR 2, respectively, were  executed (Compl. ¶¶ 92, 107), there is no allegation as to the

DBT's state of mind as of the times it made the alleged representations.  Further, even as of the

CAR 1 and CAR 2 execution dates, the allegations that the DBT "knew or should have known"

of its inability to meet the contractual delivery dates is consistent with a negligence standard.

Second, even if intentional falsity had been pled, the alleged representations that the

documents would be ready "soon" and were "close" to completion at most constitute

representations or promises that the documents would be ready and completed by the contractual

due dates -- as anything else would be incompatible with NYW's fraudulent inducement claims.[8]

The alleged representations accordingly are inextricably linked to, and indeed nothing more than

restatements of, the alleged contract obligations, dressed up in an effort to sound in fraud.  As

such, they are not collateral or extraneous to the alleged document delivery obligations contained

---

[8] To the extent the alleged representations constituted representations or promises that (a)
the documents would be ready and completed at times that were near in the future but beyond the
contractual delivery dates or (b) the documents would be ready and completed in the near future
but the DBT did not know or could not say whether that would be by the contractual due dates,
they would negate NYW's fraudulent inducement claims

in CAR 1 and CAR 2 and cannot be sued on independently for fraud. *See*, *e.g*., *Greenstreet Fin., L.P. v. CS-Graces, LLC*, No. 07 Civ. 8005 (KNF), 2009 WL 323520, at *4-5 (S.D.N.Y. Feb 4, 2009) (dismissing fraud cause of action because the pre-contract misrepresentation that the subject property was, at the time of the representation, free and clear of any liens was not collateral or extraneous to contract obligation that property be transferred free and clear of any liens); *Krantz v. Chateau Stores of Canada Ltd*., 683 N.Y.S.2d 24, 25 (App. Div. 1998) (dismissing fraud cause of action because misrepresentations as to company's profit or loss were not collateral or extraneous to the contract which provided that bonus is to be paid based on net profits; "a cause of action for fraud does not arise when the only fraud charged relates to a breach of contract").

Third, as a matter of law, the alleged statements are too vague and subjective -- when is "soon"?  Is it days, weeks or months?  Is "close" temporal, and if so is it days, weeks or months? Does "close" refer to percentage of completion, and if so is it 51%, 99% or something in between? -- to constitute representations of present fact, as opposed to non-actionable statements of opinion or prediction. *See*, *e.g*., *Hindsight Sols., LLC v. Citigroup Inc*., 53 F. Supp. 3d 747, 773 (S.D.N.Y. 2014) (dismissing a fraudulent inducement claim where alleged misrepresentations of a "software deployment freeze" and a "user freeze" are "vague on their face" in that, *inter alia*, they do not explain what the terms might mean, such as "whether new hires … would be able to use software" and "whether departing hires would be subtracted from a user freeze"); *Fierro v. Gallucci*, No. 06-CV-5189 (JFB)(WDW), 2010 WL 1223122, at *15 (E.D.N.Y. Mar. 24, 2010), *aff'd*, 423 F. App'x 17 (2d Cir. 2011) (defendant's vague and ambiguous statements as to why he wanted to purchase property, without disclosing alleged real purpose of redevelopment, cannot support a fraudulent inducement claim).

Fourth, even apart from the foregoing, there is no averment that, in entering into CAR 1 and CAR 2, NYW relied on those alleged representations, as distinct from the alleged representations that the contract delivery dates would be met (*compare* Compl. ¶¶ 273, 277). Since reliance is a necessary element of fraudulent inducement (*see* p. 12 below), the alleged representations in all events cannot support a fraudulent inducement claim.

Accordingly, Count 8 of the Complaint does not state a legally-cognizable claim for fraudulent inducement independent of a claim for breach of contract, and should be dismissed.

**B.      NYW Has in All Events Failed Adequately to Plead a Claim for Fraudulent Inducement.**

Even assuming, *arguendo*, that  NYW states a legally-cognizable, independent claim for fraudulent inducement (which it does not), Count 8 must be dismissed because it fails to state a facially plausible claim of fraud in accordance with the standards set out in *Iqbal* and *Twombly* and the requirements of Fed. R. Civ. P. 9(b).

To state a claim for fraudulent inducement under New York law, a plaintiff must plausibly allege a misrepresentation or omission of material fact, defendant's knowledge that the statement was false when made, defendant's intent to induce reliance by the plaintiff, justifiable reliance by the plaintiff, and damages.  *See Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001).[9]  Further, pursuant to Fed. R. Civ. P. 9(b), "[i]n alleging fraud  …, a party must state with particularity the circumstances constituting fraud…." To comply with this requirement, a pleading must:  "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Harsco Corp. v. Segui*, 91 F.3d

_____

[9] Fraudulent inducement is a form of common law fraud and has the same elements as fraudulent misrepresentation.  *See Baril v. JPMorgan Chase Bank, N.A.*, No. 14 Civ. 02365(JGK), 2014WL 6684055, at *3 (S.D.N.Y. Nov. 25, 2014).

337, 347 (2d Cir. 1996).  While, under Rule 9(b), knowledge and intent may be alleged

"generally", that is not a "license to base claims of fraud on speculation and conclusory

allegations," *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 267 (2d Cir. 1996) (citations omitted), and a

plaintiff  must still "allege facts that give rise to a strong inference of fraudulent intent." *Lerner v.*

*Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (citation omitted).[10]

In its Complaint, NYW makes only the following allegations of misrepresentation and

knowledge of falsity:

> -- that, at the times it entered into CAR 1 and CAR 2, "the DBT knew or should have
> known that it could not actually deliver the required engineering drawing" by the dates
> specified in Car 1 and CAR 2, respectively.  Compl. ¶¶ 92, 107;
>
> -- that the DBT "nonetheless entered into" CAR 1 and CAR 2.  Compl. ¶¶ 93, 108;
>
>  -- that the DBT "fraudulently induced Developer to enter CAR 1 by knowingly and
> falsely representing that it would provide the necessary engineering drawings by
> December 31, 2014 and March 2, 2015" and "fraudulently induced Developer to enter
> CAR 2 by knowingly and falsely representing that it would provide the engineering
> drawings needed to build the Pad and Wheel by July 1, 2015".  Compl. ¶¶ 270, 274;
>
> -- that the DBT "knew that it could not or would not deliver these engineering drawings
> until much later".  Compl. ¶¶ 271, 275; and
>
> -- that the DBT "falsely promis[ed] to deliver these engineering drawings" by the dates
> set out in CAR 1 and CAR 2, respectively.  Compl. ¶¶ 272, 276*; see also id.* ¶¶ 93.

Those allegations at best recite, in wholly conclusory form, legal elements of a fraudulent

inducement claim -- which alone is fatal.  Moreover, the Complaint fails to provide any

underlying factual detail supporting an inference that, at the times the DBT allegedly told

Developer that it would provide the engineering drawing by the dates set forth in CAR 1 and

CAR 2, respectively, the DBT (a) was in fact incapable of meeting those dates or (b) knew the

scheduled delivery dates could not be met as promised.

---

[10] *See also Iqbal*, 556 U.S. at 686-87 (Rule 9 "merely excuses a party from pleading
[fraudulent] intent under an elevated pleading standard. It does not give him license to evade the
less rigid—though still operative—strictures of Rule 8.").

Rather, the facts (as opposed to bald characterizations) alleged are fully compatible with non-fraudulent conduct, *e.g.*, that the DBT believed that the delivery dates could be met at the time the alleged statements were made and that the delivery dates were subsequently not met for reasons that had nothing to do with fraud, such as, for example, good-faith (or even negligent) mistake by the DBT, design or other changes by Developer or unforeseen events that, through no fault of the DBT, delayed the engineering work. *See*, *e.g.*, *Baril*, 2014 WL 6684055, at *3-4 (dismissing fraudulent inducement claim predicated on only "conclusory allegations"); *Kaye Dentistry, PLLC v. Turchin*, No. 13-CV-5306 (JMF), 2014 WL 2649976, at *5 (S.D.N.Y. June 13, 2014) (Furman, J.) (dismissing fraudulent inducement claim where pleading "includes no factual allegations giving rise to an inference of fraudulent intent"). Indeed, NYW effectively concedes as much when it alleges that the DBT either "knew" that the CAR 1 and CAR 2 dates could not be met or "should have known" that they could not be met (Compl. ¶¶ 92, 107) -- with both equally possible. The DBT's failure to have known something that it "should have known" is fully compatible with non-fraudulent (*e.g.*, negligent) conduct.

The Complaint also fails to plead -- with particularity or otherwise -- the specific information required to support a fraud claim under Rule 9(b). Nothing in the Complaint provides any detail about the statements alleged to be fraudulent, identifies the speaker who made those statements, states when or where the statements were made or provides an explanation as to why the statements were (allegedly) fraudulent. *See*, *e.g.*, *Kaye Dentistry*, 2014 WL 2649976, at *5 (dismissing fraud claim for failure to provide particulars required by Rule

9(b)); *Golden Archer Invs., LLC v. Skynet Fin. Sys.*, No. 11 Civ. 3673(RJS), 2012 WL 123989, at *7 (S.D.N.Y. Jan. 3, 2012) (same).[11]

For the foregoing reasons, and independent of the reasons stated in Section I.A, the Complaint's allegations of fraudulent inducement are insufficient as a matter of law.

## II.  NYW'S CLAIMS FOR SUBMISSION OF FALSE APPLICATIONS FOR PAYMENT SHOULD BE DISMISSED.

In Count 2 of the Complaint, NYW alleges that the DBT submitted "false" Applications for Payment that "overstated the DBT's percentage completion of the Work." (Compl. ¶ 229.) NYW alleges that these "false" submissions violated the DBT's obligation not to submit any Application for Payment "which intentionally is falsified in any material respect," and entitles NYW to avoid making any payment under AFPs 13 through 20, terminate the DBA pursuant to Section 13.4 thereof and recover damages.  (*Id.* ¶¶ 229-33.)  Elsewhere in the Complaint, NYW similarly asserts that the DBT submitted "false" AFPs and speculates that the DBT (allegedly) did so as "deliberate measure" designed to either obtain unauthorized advances of the Contract Sum or to generate refusals to pay by NYW that the DBT could then point to as breaches of NYW's payment obligations.  (Compl. ¶¶ 174, 177-79.)

Under the pleading requirements of *Iqbal* and *Twombly*, NYW's claim for submissions of false Applications for Payment fails to state a claim.  NYW's allegations that the AFPs were "false," and that the DBT submitted AFPs that were "intentionally … falsified" are mere

_____

[11] As previously noted, the Complaint also alleges that, prior to entry into CAR 1 and CAR 2, the DBT represented that it was "close to finally completing" the documents to be delivered by the dates scheduled in CAR 1 and CAR 2, respectively, and that it would be ready to provide the engineering documents "soon".  (Compl. ¶¶ 91, 98, 99.)  NYW does not, however, contend that those alleged statements were false, or known to be false, when made.  Nor does it provide, with respect to those alleged statements, any factual information that would give rise to an inference of intentional falsity or any of the particularity required under Rule 9(b). The statements alleged in ¶¶ 91, 98 and 99 of the Complaint thus likewise are inadequate to support a fraudulent inducement claim.

conclusory labels.  And, the Complaint contains no factual content that would allow a reasonable inference that any of the AFPs submitted by the DBT was false or that the DBT intentionally submitted AFPs that it knew to be false.

Under Article X of the DBA, in an Application for Payment, the DBT is to measure the operations that have been completed as against the Schedule of Values (which sets forth the total allocated  amounts for the various categories of work listed in the Schedule of Values); the amount of the progress payment submitted in the AFP is then calculated by "multiplying the percentage of completion of each portion of the Work by the share of the Base Contract Sum allocated to that portion of the Work in the most recent Schedule of Values."  (Jemison Decl. Ex. A, §§ 10.2, 10.7.1.)  The Complaint fails to allege, in non-conclusory fashion, that the DBT at any time submitted an AFP in which it reported, as completed, operations that had not in fact been completed.  The Complaint also fails to allege any facts supporting an inference that, to the extent the DBT had submitted any AFPs that over-stated the completed operations, such overstatement was the result of intentional falsification, designed to achieve nefarious ends,[12] as opposed to, for example, good-faith but erroneous assessment of the percent of operations completed or other non-fraudulent mistake.  Thus, the allegations fail to raise the possibility that

_____

[12] NYW's allegation, made "on information and belief," that the DBT's "submission of false AFPs" was a "deliberate measure" intended to provide the DBT with a monetary or strategic advantage (Compl. ¶ 179) assumes its conclusion that the Applications for Payment in question were in fact "false" and fails to provide any factual support for either the assumed falsity of the AFPs or the existence of the "deliberate measure" posited therein. *See*, *e.g*., *JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 527, (S.D.N.Y. 2013) (while, under *Twombly*, a plaintiff may plead on "information and belief" where "the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible," such allegations must be "accompanied by a statement of the facts upon which the belief is founded"); *Williams v. Calderoni*, No. 11 Civ. 3020(CM), 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012) (allegations of  improper intent made on "information and belief" held inadequate under Rule 12(b)(6) where allegations point to no "information" that would render them "any more than a speculative claim").

the DBT submitted intentionally-falsified AFPs "above the speculative level." *Twombly*, 550 U.S. at 545.

While the foregoing is dispositive, because Count 2 is predicated on and pleads intentional falsification, it sounds in fraud and is subject to the heightened pleading requirements of Rule 9(b). *Rombach v. Chang*, 355 F.3d 164, 166, 170 (2d Cir. 2004); *In re Harbinger Capital Partners Funds Investor Litigation*, No. 12-CV-1244 AJN, 2015 WL 1439520, at *10 (S.D.N.Y. Mar. 30 2015) ("Rule 9(b)'s standards must be met not only for claims directly alleging fraud, but for 'all averments of fraud or mistake, whatever may be the theory of legal duty—statutory, common law, tort, contractual, or fiduciary.'") (citations omitted); *DeBlasio v. Merrill Lynch & Co.*, No. 07-CIV-318 RJS, 2009 WL 2242605, at *12 (S.D.N.Y. July 27, 2009) (Rule 9(b) applies to breach of contract claim that is predicated on allegations of intentional misrepresentation); *In re MSR Hotels & Resorts, Inc.*, No. 13-11512 (SHL), 2013 WL 5716897, at *1 (S.D.N.Y. Bankr. Oct. 1, 2013) (applying Rule 9(b) to contract claims for indemnification for liability arising out of signatory's fraudulent act or intentional omission).[13]

Under Rule 9(b), NYW was, *inter alia*, required, for each of the 8 AFPs that it asserts were intentionally falsified, to identify the specific portions of the AFP that it maintains were false and explain why (in its view) those portions were the product of intentional falsification. *See*, *e.g.*, *In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*, 991 F. Supp. 2d 479, 492 (S.D.N.Y. 2014) (alleged falsity of invoices not adequately pled under Rule 9(b); "[p]laintiffs allege substantially nothing about the text of the custodial invoices. They fail to identify a single statement in any of the invoices that arguably was false or even misleading"); *Leung v. Law*, 387 F. Supp. 2d 105, 115 (E.D.N.Y. 2005) ("Leung repeatedly alleges that the defendants 'provided

---

[13] *Accord*, *Matsumura v. Benihana Nat'l Corp.*, 542 F. Supp. 2d 245, 251 (S.D.N.Y. 2008); *Frota v. Prudential–Bache Sec., Inc.*, 639 F. Supp. 1186, 1193 (S.D.N.Y. 1986).

false financial statements,' 'false information' and 'false financial reports' to the Bank of Asia, thus 'misrepresenting" SDJ's financial condition by "substantially understat[ing] the net worth' of the corporation. … However, since Leung nowhere identifies the precise statements that he alleges were made fraudulently to Bank of Asia, Rule 9(b) demands that this allegation be dismissed"); *Refined Sugars Inc. v. Hazou*, No. 85 CIV. 7028 (SWK), 1987 WL 19024, at *2 (S.D.N.Y. Oct. 20 1987) (allegation that documents falsely misrepresented sugar exports; "[t]he complaint does not provide any factual basis to support the assertions that the sugar was not sent or that the documents were false. Plaintiffs merely assert that defendants have failed to provide 'valid documentation'. … Absent facts sufficient to create an inference of fraud, the complaint does not satisfy Rule 9(b)").

NYW has failed utterly to meet the strictures of Rule 9(b). For any and all of the 8 allegedly "false" AFPs, the Complaint does not identify even a single instance in which the progress reported in the AFP over-stated the actual progress, let alone provide any factual basis giving rise to a "strong inference," as is required under Rule 9(b), that the alleged over-statement was made with fraudulent intent. *Lerner*, 459 F.3d at 290.[14]

Thus, Count 2 of the Complaint fails to state a claims and should be dismissed.

## III. NYW'S REQUEST FOR A DECARALORY JUDGMENT OF "NO BREACH" SHOULD BE DISMISSED.

Count 9 of the Complaint should be dismissed both because (a) it fails to present a

---

[14] The allegations in ¶ 179 of the Complaint made on "information and belief," discussed at n.12 above, are no less deficient when assessed under Rule 9(b). *See, e.g.*, *Slinin v. Shnaider*, No. 15-CV-9674 (RJS), 2017 WL 464426, at *4 (S.D.N.Y. Feb. 2, 2017) (under Rule 9(b), "matters alleged 'on information and belief' must be 'accompanied by a statement of the facts upon which the belief is based'") (*quoting First Capital Asset Mgmt., Inc. v. Satinwood, Inc*., 385 F.3d 159, 179 (2d Cir. 2004); *see also Fuji Photo Film U.S.A., Inc. v. McNulty*, 640 F. Supp. 2d 300, 310 (S.D.N.Y. 2009) ("Where a plaintiff is permitted to plead on information and belief, the 'complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard.'") (citation omitted).

justiciable case or controversy as required by Article III of the Constitution, and (b) the declaratory relief it seeks is retrospective only, which renders it dismissible for lack of standing or in the exercise of this Court's discretion.  We discuss these grounds in turn.

First, Article III of the United States Constitution limits the exercise of judicial power to "cases" and "controversies."  U.S. Const. art. III.  The Declaratory Judgment Act similarly authorizes United States courts to issue declaratory judgments with respect to "actual controversy within [the court's] jurisdiction."  28 U.S.C. § 2201(a).  *Chevron Corp. v. Naranjo,* 667 F.3d 232, 245 (2 Cir. 2012) (powers extended under the Declaratory Judgment Act limited to cases and controversies within Article III jurisdiction).

For an Article III case or controversy to exist, there must be an actual or imminent concrete dispute.  The factual and legal dimensions of the controversy must be "well defined," and the adversity of legal interests between the parties must be "real." *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007); *Nike, Inc. v. Already, LLC,* 663 F.3d 89, 96 (2d Cir. 2011).  Declaratory judgments may thus adjudicate only "concrete legal issues, presented in actual cases, not abstractions."  *Golden v. Zwickler,* 394 U.S. 103, 108 (1969).

By contrast, claims requesting "blanket approvals" or broad declarations about every possible conflict, untethered to specific, actual disputes and isolated from concrete facts, do not present justiciable controversies, but are at most impermissible requests for advisory opinions. *See, e.g.*, *Windstream Services, LLC v. BMG Rights Management (US) LLC,* No. 16-CIV-5015 KMW/RLE, 2017 WL 1386357, at *7-9 (S.D.N.Y. Apr. 17, 2017) (appeal pending) (dismissing, for lack of subject matter jurisdiction, plaintiff's claim seeking a "blanket" declaration of non-infringement of copyrights  covering "every possible conflict that has occurred or could occur in the future," where no actual dispute had been shown and the sought were "dependent on a variety

of specific factual determinations that simply cannot be made in broad strokes in a declaratory judgment"); *Broadcom Corp. v. Qualcomm Inc.,* No. 08-cv-1829 WQH (LSP), 2009 WL 684835, at *6 (S.D. Cal. Mar. 12, 2009) (dismissing declaratory judgment action for lack of subject matter jurisdiction where plaintiff failed to "identify with any specificity" any of defendant's thousands of relevant patents and because plaintiff failed to specify any affirmative act by defendant showing an actual or imminent claim of infringement); *Applera Corp. v. Mich. Diagnostics, LLC,* 594 F. Supp. 2d 150, 160 (D. Mass. 2009) (dismissing declaratory judgment counterclaim where patent holder merely wrote a letter that, "with some palpable bravura, suggested a review of its entire patent portfolio, but … did not make any specific allegations of infringement" as to fifty-five patents).

These same precepts apply in the context of claims concerning breach of contract.  For example, in *Hillwood Development Co., LLC v. Related Companies, Inc.,* the Court held that plaintiffs' request for a declaration that, *inter alia*, they "[have] not breached and [are] not in breach" of a letter of intent did not present a justiciable controversy, where defendant sent a "saber rattling" letter but did not actually threaten suit. No. 04-CV-1100-L, 2006 WL 1140472, at *3, 7-8 (N.D. Tex. April 28, 2006).  Similarly, in *Aero Tech Aviation Design, LLC v. Otto Aviation Group, LLC,* No. 15-cv-1373-EFM-TJJ, 2017 WL 1397545, at *10 (D. Kan Apr. 18, 2017), Otto Aviation sought a declaratory judgment that it had not breached its contract with Aero Tech, but failed to show that Aero Tech had made a claim of breach.  The Court dismissed the request, stating that Otto Aviation's attempt to "litigate this ostensible controversy now over unfiled, potential ... claims is 'the very sort of speculative, hypothetical factual scenario that would render such a [declaratory] judgment a prohibited advisory opinion.'"  *Id.*

In this case, Count 9 of the Complaint requests a "blanket" declaratory judgment that NYW "is not in breach of its obligations under the [DBA]." (Compl. ¶ 284.) The DBA is more than 80 pages long, and provides for a myriad of obligations on the part of NYW, including but not limited to those set forth in Articles IV, V, VI, VII, IX and X. Yet, Count 9 fails to identify any specific alleged breach or to plead a concrete set of facts showing that, for each -- or any -- of those obligations, it is subject to a claim of breach by the DBT and that such claim has actually been made or is imminent.[15] Count 9 thus presents, at most, a request for a non-justiciable advisory opinion, covering every imaginable (and unasserted) claim of breach, and should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).[16]

Second, independent of the foregoing, it is well-established that, "[t]o obtain *prospective* relief, such as a declaratory judgment . . ., a plaintiff must show, *inter alia,* 'a sufficient likelihood that he or she will again be wronged in a similar way.'" *Marcavage v. City of New York,* 689 F.3d 98, 103 (2d Cir. 2012) (emphasis in original) (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 111 (1983)).[17]

---

[15] To be clear, the DBT intends to assert, at the appropriate juncture, counterclaims alleging breaches by NYW. Count 9 of the Complaint, however, does not even attempt to anticipate specific potential counterclaims, but instead requests a blanket declaration of "no breach" untied to any concrete factual or contractual context.

[16] We are aware that NYW has made requests for declarations of non-liability with respect to certain of its obligations under the DBA in Counts 2, 4 and 5 of the DBA. (*See* Compl. ¶¶ 232, 240-44, 246-54.) We assume that the declaratory judgment requested in Count 9 was not intended to include those separately-requested declarations within its scope. To the extent that it was, the overlapping component claims of Count 9 should be dismissed as duplicative of the declaratory judgment claims in Counts 2, 4 and 5. *See Matthew v. RCN Corp.*, No. 12 Civ. 0185(JMF), 2012 WL 5834917, at *8 n.8 (S.D.N.Y. Nov. 14, 2012) (Furman, J.) ("'Plaintiffs' declaratory judgment claim seeks resolution of legal issues that will, of necessity, be resolved in the course of the litigation of the other causes of action. Therefore, the claim is duplicative in that it seeks no relief that is not implicitly sought in the other causes of action.'") (quoting *Sofi Classic S .A. de C.V. v. Hurowitz*, 444 F. Supp.2d 231, 249 (S.D.N.Y. 2006)).

[17] By contrast, a plaintiff seeking retrospective relief need only show that "(1) the plaintiff suffered an injury in fact that is concrete and not conjectural or hypothetical, (2) the

Thus, "[a] plaintiff seeking … declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." *Deshawn E. by Charlotte E. v. Safir,* 156 F.3d 340, 344 (2d Cir. 1998). *See also Peck v. Baldwinsville Cent. School Dist.,* 351 Fed. Appx. 477, 479 (2d Cir. 2009) (same); *Center for Bio-Ethical Reform, Inc. v. Black,* 13–CV–581–A, 2017 WL 550645 at *3 (S.D.N.Y. Feb. 10, 2017) (to seek a declaratory judgment, plaintiff must "satisfy the requirement that threatened injury must be 'certainly impending"); *Kassman v. KPMG LLP,* 925 F. Supp.2d 453, 465-6 (S.D.N.Y. 2013) (Furman, J.) (declaratory relief not available where there "is no prospect that [the plaintiff] will be injured in the future") ; *John Wiley & Sons, Inc. v. Visuals Unlimited, Inc.,* No. 11–CV–5453–CM, 2011 WL 5245192, at *4 (S.D.N.Y. Nov. 2, 2011) ("The reason for this rule is clear: declaratory relief is intended to operate prospectively. There is no basis for declaratory relief where only past acts are involved," including claims for fraud."); *Gianni Sport Ltd. v. Metallica,* No. 00-CIV.- 0937 (MBM), 2000 WL 1773511, at *4 (S.D.N.Y. Dec. 4, 2000) (dismissing action seeking declaration of non-liability for past alleged trademark infringement because "any damages that are due have already accrued").[18]

A number of courts, including the Second Circuit, have treated the requirement that a plaintiff seeking a declaratory judgment must show immediate or future injury as an element of standing, which must be met in order for subject matter jurisdiction to obtain. *E.g.*, *Deshawn E.,*

---

injury is fairly traceable to the actions of the defendant, and (3) the injury will be redressed by a favorable decision." *Marcavage,* 689 F.3d at 103.

[18] *Accord*, *Mariah Re Ltd. v. American Family Mut. Ins. Co.,* 52 F. Supp. 3d 601, 623 (S.D.N.Y. 2014); *S.E.C. v. Credit Bancorp, Ltd.,* 738 F. Supp. 2d 376, 388-9 (S.D.N.Y. 2010); *National Union Fire Ins. Co. of Pittsburgh, PA. v. International Wire Group, Inc.,* No. 02-Civ.-10338 (SAS), 2003 WL 21277114, at *5 (S.D.N.Y. June 2, 2003); *Hillwood Development*, 2006 WL 1140472, at *8 ("Plaintiffs are, at least partially, requesting the court to declare that their past conduct did not breach the Letter of Intent. The 'purpose of the Declaratory Judgment Act is not the declaration of non-liability for past conduct....'") (citation omitted).

156 F.3d at 344; *Center for Bio-Ethical Reform,* 2017 WL 550645 at *3; *Kassman,* 925 F.

Supp.2d at 465-66.  Others, however, have dismissed requests for declaratory judgments that

sought only retrospective declarations in the exercise of their discretion under the Declaratory

Judgment Act.  *E.g*., *John Wiley & Sons,* 2011 WL 5245192, at *4; *National Union Fire Ins. Co,*

2003 WL 21277114, at *5; *Gianni*, 2000 WL 1773511, at *4.

      Here, Count 9 of the Complaint seeks a declaration of non-liability solely with respect to

potential breaches, by NYW, that occurred in the past.  There is no allegation that NYW will be

subject to a claim of breach under the DBA based on actions to be taken by it the future.[19]

Accordingly, Count 9 should be dismissed under Fed. R. Civ. P. R. 12(b)(1) on grounds of

NYW's lack of standing to assert the claim for a declaratory judgment sought therein.

Alternatively, the Court should, for like reason, dismiss Count 9 in the exercise of its discretion

under the Declaratory Judgment Act.

## IV.  NYW'S CLAIM FOR UNJUST ENRICHMENT SHOULD BE DISMISSED.

      Count 11 of the Complaint asserts that the DBT has submitted AFPs that contain

overstatements of the percentage of work completed, such that NYW "has paid or will pay

money not due and owing" under the DBA, and seeks damages on grounds of unjust enrichment.

(Compl. ¶¶ 293 -99.)  In the circumstances here, NYW is legally precluded from proceeding on

an unjust enrichment theory, and Count 11 must be dismissed under Fed. R. Civ. P. 12(b)(6).

      Unjust enrichment under New York law is a quasi-contractual theory.  *Lightfoot v. Union*

*Carbide Corp.,* 110 F.3d 898, 905 (2d Cir.1997).[20]  It is "an obligation the law creates in the

---

[19] As the Court may recall, NYW has purported to terminate the DBA for cause.  (*See* ECF No. 44 (Pl. Letter dated July 12, 2017), at 1.)  In the interest of completeness, we note that the DBT has exercised its right of withdrawal under Section 13.3(a) of the DBA.

[20] To state a claim for unjust enrichment, a plaintiff must allege that:  "(1) the defendant was enriched, (2) at the expense of the plaintiff, and (3) that it would be inequitable to permit the

absence of any agreement." *Goldman v. Metro. Life Ins. Co.*, 841 N.E.2d 742, 746 (N.Y. 2005).

Thus, where the subject matter in dispute is governed by a contract, a plaintiff cannot seek

recovery on an unjust enrichment claim. *Lightfoot*, 110 F.3d at 905; *Goldman*, 841 N.E.2d at

746-47; *see also Mid–Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d

168, 175 (2d Cir. 2005) ("New York law does not permit recovery in [unjust enrichment] … if

parties have a valid, enforceable contract that governs the same subject matter as the [unjust

enrichment] claim."); *New Paradigm Software Corp. v. New Era of Networks, Inc.*, 107 F. Supp.

2d 325, 329 (S.D.N.Y. 2000) (same); *Goldman*, 841 N.E.2d at 746-47 ("Given that the disputed

terms and conditions fall entirely within the insurance contract, there is no valid claim for unjust

enrichment.").[21]

That controlling principle applies with full force here. The subject matter of AFPs,

including the basis on and manner in which requests for progress payments are to be prepared, is

governed by the DBA, including, without limitation, Article X thereof. Thus, to the extent that

NYW contends that the DBT submitted AFPs that did not comply with the requirements of

Article X of the DBA, its claim, if any, lies in contract only.[22]

Count 11 also contains a request for a declaratory judgment that the DBT "must

substantiate its percentage completion using documentation of its total expected costs on each

---

defendant to retain that which is claimed by the plaintiff." *Clifford R. Gray, Inc. v. LeChase Constr Sers., LLC*, 819 N.Y.S.2d 182, 187 (App. Div. 2006).

[21] S*ee also IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268, 274 (N.Y. 2009) ("Where the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded.").

[22] While NYW does not say, the Applications for Payment that are the subject of Count 11 are presumably the same ones that are the subject of Count 2 of the Complaint (discussed at pp. 15-18 above), in which NYW claims that the DBT violated its obligations under the DBA by intentionally falsifying the percentage of work reported as completed in those AFPs.

line-item on the Schedule of Values." (Compl. ¶ 299.) That request should be dismissed

pursuant to Fed. R. Civ. P. 12(b)(6) in that, for the reasons set forth above and as a matter of law,

NYW has no cognizable right to request such a declaratory judgment on an unjust enrichment

theory. In this regard, NYW has, as part of the contract claims asserted in Count 6, requested the

same declaratory judgment, virtually *in haec verba*,[23] which renders it additionally dismissible as

duplicative (*see* n.16 above).

## Conclusion

For the reasons stated above, Defendant's motion to dismiss should be granted and

Counts 2, 8, 9 and 11 of the Complaint should be dismissed, with prejudice.

Dated: August 11, 2017
     New York, N.Y.

<div style="margin-left: 40%;">

Respectfully submitted,

DENTONS US LLP

By:    */s/ Philip R. White*     
       Philip R. White
       phil.white@dentons.com
       Anthony B. Ullman
       anthony.ullman@dentons.com
       Jonathan S. Jemison
       jonathan.jemison@dentons.com
       1221 Avenue of the Americas
       New York, NY 10020-1089
       Telephone: (212) 768-6700
       Facsimile: (212) 768-6800

       *Attorneys for Defendant*
       *Mammoet-Starneth LLC*

</div>

---

[23] *See* Compl. ¶ 264 (requesting declaration that the DBT "must substantiate its percentage completion using documentation of its total expected costs for each line-item on the Schedule of Values").