**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NEW YORK WHEEL OWNER LLC,<br><br>Plaintiff,<br><br>v.<br><br>MAMMOET-STARNETH LLC, MAMMOET USA NORTH INC., STARNETH LLC, MAMMOET HOLDING B.V. and STARNETH B.V.,<br><br>Defendants, | Case No. 17-cv-4026-JMF |
| MAMMOET-STARNETH LLC,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>THE CITY OF NEW YORK,<br><br>Third-Party Defendant. | |

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS
MAMMOET USA NORTH INC., STARNETH LLC, MAMMOET USA
HOLDING, INC., MAMMOET HOLDING B.V. AND STARNETH B.V.
TO DISMISS THE SECOND AMENDED COMPLAINT**

DENTONS US LLP
1221 Avenue of the Americas
New York, NY  10020-1089
Telephone:     (212) 768-6700
Facsimile:      (212) 768-6800

*Attorneys for Defendants Mammoet
USA North Inc., Starneth LLC,
Mammoet USA Holding, Inc.,
Mammoet Holding B.V. and Starneth B.V.*

## Table of Contents

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ......................................................................................................... 2

    I.      COUNT 4 OF THE SAC SHOULD BE DISMISSED ............................................ 2

    II.     COUNT 6 OF THE SAC SHOULD BE DISMISSED ............................................ 6

    III.    COUNT 10 OF THE SAC SHOULD BE DISMISSED .......................................... 7

    IV.   COUNT 11 OF THE SAC SHOULD BE DISMISSED .......................................... 8

    V.     COUNT 12 OF THE SAC SHOULD BE DISMISSED ........................................ 10

    VI.   COUNTS 13-17 OF THE SAC SHOULD BE DISMISSED. ............................... 13

          A.      The SAC's Allegations of Exclusive Domination and Control Over the DBT Are Inadequate under *Iqbal* and *Twombly* ...................................... 13

          B.      The SAC Fails Plausibly to Plead that the DBT's Corporate Form Was Established or Used to Perpetuate any Injustice or Fraud. ...................... 16

          C.      Counts 13-17 Also Should Be Dismissed for Reasons Independent of NYW's Failure Plausibly to Allege *Alter Ego* .......................................... 18

CONCLUSION .................................................................................................... 18

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>C</u>ASES

*Am. Lecithin Co. v. Rebmann*,
 2017 WL 4402535 (S.D.N.Y. Sept. 30, 2017) ........................................................................13

*Anita Terrace Owners, Inc. v. Goldstein Assocs. Consulting Engineers, PLLC*,
 2013 WL 3485141 (Sup. Ct. Queens Cty. July 12, 2013) ......................................................11

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
 493 F.3d 87 (2d Cir. 2007) .......................................................................................................5

*B & M Linen, Corp. v. Kannegiesser USA, Corp.*,
 2013 WL 1142679 (S.D.N.Y. Mar. 19, 2013) .......................................................................11

*Bankers Trust Co. v. Hale & Kilburn*,
 84 F.2d 401 (2d Cir. 1936) .....................................................................................................12

*Bloom v. Rock*,
 2010 WL 2267468 (S.D.N.Y. May 27, 2010) .........................................................................6

*Brunswick Corp. v. Waxman*,
 599 F.2d 34 (2d Cir. 1979) ................................................................................................1, 16

*Caplan v. Unimax Holdings Corp.*,
 591 N.Y.S.2d 28 (App. Div. 1992) .........................................................................................12

*Chill v. Gen. Elec. Co.*,
 101 F.3d 263 (2d Cir. 1996) .....................................................................................................4

*Cohen v. Avanade*,
 874 F. Supp. 2d 315 (S.D.N.Y. 2012) (Furman, J.) ...............................................................11

*Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.*,
 611 N.E.2d 282 (N.Y. 1993) ..................................................................................................12

*Consol. Edison Co. of New York v. Westinghouse Elec. Corp.*,
 567 F. Supp. 358 (S.D.N.Y. 1983) .........................................................................................11

*CPC Int'l Inc. v. McKesson Corp.*,
 70 N.Y.2d 268 (1987) ...............................................................................................................3

*Cristallina S.A. v. Christie, Manson & Woods Int'l, Inc.*,
 117 A.D.2d 284 (1st Dep't 1986) .............................................................................................3

*Educ. Ctr. for New Americans, Inc. v. 66th Ave. Realty Co.*,
   15 N.Y.S.3d 385 (App. Div. 2015) ...................................................................12, 18

*EJS-ASOC Ticaret Ve Danismanlik Ltd. STI. v. Am. Tel. & Tel. Co.*,
   1993 WL 288289 (S.D.N.Y. July 28, 1993) ......................................................12, 18

*Favour Mind Ltd. V. Pacific Shores, Inc.*,
   2004 WL 97649 (S.D.N.Y Jan. 20, 2004) .................................................................16

*Feiner Family Tr. v. Xcelera.com, Inc.*,
   2008 WL 5233605 (S.D.N.Y. Dec. 15, 2008), *aff'd*, 352 F. App'x 461 (2d Cir.
   2009) ..........................................................................................................................6

*Four Finger Art Factory, Inc. v. Dinicola*,
   2001 WL 21248 (S.D.N.Y. Jan. 9, 2001) ..................................................................8

*GoSmile, Inc. v. Levine*,
   81 A.D.3d 77 (1st Dep't 2010) ...................................................................................3

*In re Health Mgmt., Inc. Sec. Litig.*,
   970 F. Supp. 192 (E.D.N.Y. 1997) .............................................................................7

*JBCHoldings NY, LLC v. Pakter*,
   931 F. Supp. 2d 514 (S.D.N.Y. 2013) ........................................................................4

*John Deere Shared Servs., Inc. v. Success Apparel LLC*,
   2015 WL 6656932 (S.D.N.Y. Oct. 30, 2015) (Furman, J.) ......................................15

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001) .......................................................................................4

*Kimmell v. Schaefer*,
   675 N.E.2d 450 (N.Y. 1996) .....................................................................................10

*Kinsey v. Cendant Corp.*,
   2005 WL 1907678 (S.D.N.Y. Aug. 10, 2005) ..........................................................12

*Kronos, Inc. v. AVX Corp.*,
   612 N.E.2d 289 (N.Y. 1993) .......................................................................................9

*LaSalle Nat. Bank v. Perelman*,
   141 F. Supp. 2d 451 (D. Del. 2001) .....................................................................12, 18

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*,
   244 F.R.D. 204 (S.D.N.Y. 2007) ..............................................................................11

*McBeth v. Porges*,
   171 F. Supp. 3d 216, 234 (S.D.N.Y. 2017) ..............................................................17

iii

*MFW Assocs., LLC v. Plausteiner*,
  2017 WL 1057311 (S.D.N.Y. Mar. 16, 2017) ...........................................................6

*Murray v. Xerox Corp.*,
  811 F.2d 118 (2d Cir. 1987)..........................................................................3, 11

*Ossining Union Free Sch. Dist. v Anderson LaRocca Anderson*,
  73 N.Y.2d 417 (N.Y. 1989) ..............................................................................11

*Paradigm BioDevices, Inc. v. Centinel Spine, Inc.*,
  2013 WL 1830416 (S.D.N.Y. May 1, 2013) (Furman, J.)..........................13, 15, 17

*PFT of Am., Inc. v. Tradewell, Inc.*,
  1999 WL 179358 (S.D.N.Y. Mar. 31, 1999) .........................................................6

*Qube Films Ltd v. Padell*,
  2016 WL 881128 (S.D.N.Y. Mar. 1, 2016) ..........................................................3

*In re Scholastic Corp. Sec. Litig.*,
  252 F.3d 63 (2d Cir. 2001).................................................................................4

*Semerdjian v. McDougal Littell*,
  2008 WL 110942 (S.D.N.Y. Jan. 2, 2008) ...........................................................7

*Shields v. Citytrust Bancorp., Inc.*,
  25 F.3d 1124 (2d Cir. 1994)...........................................................................4, 6

*Shugrue v. Stahl*,
  117 A.D.3d 527 (1st Dep't 2014) ........................................................................3

*Small v. Sullivan*,
  157 N.E. 261 (N.Y. 1927)................................................................................12

*Strunk v. U.S. House of Representatives*,
  68 F. App'x 233 (2d Cir. 2003).......................................................................1, 5

*Those Certain Interested Underwriters, at Lloyd's, London, subscribing to Policy
  No. Z101663/003 v. Farley Group*,
  2015 WL 5602924, (N.D.N.Y. Sept. 23, 2015) ....................................................10

*Vantone Grp. Ltd. Liab. Co. v. Yangpu NGT Indus. Co.*,
  2015 WL 4040882 (S.D.N.Y. July 2, 2015) ......................................................1, 5

*Wexner v. First Manhattan Co.*,
  902 F.2d 169 (2d Cir. 1990)...............................................................................5

*Wilmington Tr. Co. v. Hellas Telecomms., S.à.r.l.*,
  2016 WL 7339112 (S.D.N.Y. Aug. 4, 2016)........................................................12

iv

*Winner Acceptance Corp. v. Return on Capital Corp.*,
   2008 WL 5352063 (Del. Ch. Dec. 23, 2008) ......................................................................17

*Xuchang Rihetai Human Hair Goods Co., Ltd. v. Hanyu Int'l USA Inc.*,
   2001 WL 883646 (S.D.N.Y. Aug. 7, 2001) ...........................................................................3

## **R**ULES

Federal Rules of Civil Procedure
   Rule 8 ...................................................................................................................................5, 13
   Rule 9(b) .......................................................................................................................... *passim*
   Rule 9(g) ..................................................................................................................................5

The non-DBT Defendants ("NDDs") respectfully submit this reply memorandum in support of their motion to dismiss the Second Amended Complaint ("SAC").

## Preliminary Statement

NYW's opposition brief (Dkt. #179, "Opp.") only further shows that its claims against the NDDs lack any foundation in fact and are rhetoric without substance.  As one prominent example, in its arguments on *alter ego*, NYW shrilly cries "injustice" because the DBT was a single purpose entity.  However, nowhere in its 45-page response does NYW address, let alone rebut, the uncontestable, and admitted, fact that, at the time it entered into the DBA, NYW viewed the DBT as a "shell" company yet, while demanding guarantees from DBT affiliates for the benefit of its lenders, did not obtain any financial security for itself.  This fact, and NYW's silence on this issue, is fatal to the *alter ego* claims.  NYW "obtained precisely what it bargained for, and it did not bargain for or contemplate the individual liability of the [NDDs] which it now seeks to enforce.  To pierce the corporate veil here would not … accomplish justice or equity but would in fact thwart that end."  *Brunswick Corp. v. Waxman*, 599 F.2d 34, 36 (2d Cir. 1979).

Likewise, on its tort claims, NYW hurls collective accusations, but fails to identify what each individual NDD allegedly did.  While NYW seeks to characterize this as permissible "group pleading," as its own cases make clear, regardless whether the defendants allegedly are part of a "group," a complaint must distinguish between the conduct of each defendant,[1] which the SAC fails to do.  NYW's inability to plead specific facts as to any NDD reveals that its tort claims lie, if at all, against the DBT only, but, as the DBT has separately shown, those claims lack merit.

Faced with the deficiencies of its pleading, NYW looks to the Delaware bankruptcy proceeding to try to save its claims against the NDDs.  (Opp. 2, 36, 44.)  The SAC, however,

---

[1] *See Vantone Grp. Ltd. Liab. Co. v. Yangpu NGT Indus. Co*., 2015 WL 4040882, at *4 (S.D.N.Y. July 2, 2015); *Strunk v. U.S. House of Representatives*, 68 F. App'x 233, 235 (2d Cir. 2003)), both cited Opp. 10.

must be judged, and stand or fall, on its own.  In any event, NYW's characterizations of the bankruptcy proceeding bear no resemblance to reality.  Case in point:  whereas NYW claims that the record in the bankruptcy proceeding shows that one or more of the NDDs "stripped [the DBT] of assets in order to frustrate" NYW, the material cited states only that the project's technology and components were part of an integrated design. (*See* Opp. 36, citing Dkt. #178-6, ¶¶ 28-29.)

No plausible claim against the NDDs has been stated, and the SAC should be dismissed.

<u>**Argument**</u>

**I.    COUNT 4 OF THE SAC SHOULD BE DISMISSED**.

NYW's arguments against dismissal of Count 4 are unavailing.

<u>First</u>, NYW concedes that, to state a claim, it must plead a misrepresentation of fact that was collateral to the contract, and that a misrepresentation of a party's intent to perform is not collateral.  (Opp. 6-7.)  However, the only representation alleged is that the engineering documents were "nearly complete".  As shown in our opening brief (Dkt. #167, "Br.") at pp. 4-5, that was nothing more than a representation that the drawings would be done by the contractual dates.  This is admitted in the SAC itself, which describes the subject representation as representing that the DBT "would provide" the drawings by the contractual deadlines.  (SAC ¶¶ 485, 489.)

NYW argues that the NDDs falsely represented "that the plans were closer to completion than they actually were."  (Opp. 5.)  That, however, is not what NYW alleged, and the SAC contains no factual allegations as to what the plans "actually were."  To be clear, if NYW had, for example, pled that the NDDs represented that the plans were 90% complete when they were actually only 10% complete, that could potentially state a misrepresentation of fact.  NYW did not, and the representation of false intent to perform that it did allege is non-actionable.

2

The cases cited by NYW (Opp. 5-6 ) are inapposite.  All but one involved alleged factual misrepresentations that clearly were collateral to the contracts or did not overlap with contract obligations.[2]  The exception is *Qube Films Ltd v. Padell*, 2016 WL 881128, at *3 (S.D.N.Y. Mar. 1, 2016), in which the misrepresentations concerned how defendant would perform under contract and gave plaintiff a "false sense of security" that induced it to execute.  The Court dismissed the claim, writing that a "false … promise to perform does not constitute fraud."  The same reasoning applies here.

Second, NYW's arguments (Opp. 7-9) that its allegations of fraud meet the standards of *Iqbal*/*Twombly* and Rule 9(b) are baseless.  Specifically:

(a)      NYW still fails to identify to any factual allegations plausibly showing that, when the NDDs allegedly said that the drawings were "nearly complete," they were not.

(b)      NYW argues that the alleged misrepresentations could not have been "innocent" because the contractual due dates were not met.  (Opp. 8.)  However, "[u]nder New York law, fraudulent intent is not demonstrated by evidence of mere non-performance of a promise." *Murray v. Xerox Corp.*, 811 F.2d 118, 122 (2d Cir. 1987).

(c)      While NYW asserts that it adequately pled intent to defraud by showing "motive and opportunity," the only motive posited is the NDDs' desire to increase the Contract Sum--*i.e.*,

---

[2] *See GoSmile, Inc. v. Levine*, 81 A.D.3d 77, 81–82 (1st Dep't 2010) (misrepresentation that defendant had not breached prior non-compete, which was also a contractual warranty); *Shugrue v. Stahl*, 117 A.D.3d 527, 528 (1st Dep't 2014) (misrepresentations that defendants had obtained required permits and approvals and completed plans for construction project were "of then present facts that were collateral to the contract"); *Xuchang Rihetai Human Hair Goods Co., Ltd. v. Hanyu Int'l USA Inc.*, 2001 WL 883646, at *6 (S.D.N.Y. Aug. 7, 2001) (misrepresentations about company's pre-contract monthly sales and principal's ownership of additional property); *Cristallina S.A. v. Christie, Manson & Woods Int'l, Inc.*, 117 A.D.2d 284, 286, 294–95 (1st Dep't 1986) (misrepresentation of value of paintings to be sold at auction; auction contract did not obligate auction house to sell at any particular price); *CPC Int'l Inc. v. McKesson Corp.*, 70 N.Y.2d 268, 285-86 (1987) (projections by investment bank that materially misrepresented company's actual financial condition, causing purchasers to pay more than the stock was worth).

to make more money or cover losses.  But that generalized motive is shared by all commercial enterprises and is insufficient to infer fraudulent intent.  *Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994).[3]  Nor does the alleged scheme make sense:  why would the NDDs lie about the status of the documents knowing that the due dates were upcoming, that they would not be met and that both they and the DBT would then be subject to suit?[4]

NYW further argues that falsity and intent to deceive were adequately pled because the plans and specifications that had to be filed to apply for a building permit were voluminous. (Opp. 8, citing Dkt. #31, ¶ 4 (Declaration of Mark Deceglie).)  To the extent considered, the Deceglie declaration, which is not referred to in the SAC, adds nothing.  That the documents required for filing may have been voluminous not show that they were not "nearly complete" (whatever that means) when the alleged misrepresentations were made.  Moreover, Mr. Deceglie admits that the documents were filed as part of NYW's building permit application on January 4, 2015--a **mere 5 days** after the CAR 1 delivery deadline for those documents.  (*See id;* SAC  ¶ 138.)  The Deceglie declaration thus only underscores the complete lack of any plausible basis to infer that the NDDs' alleged representation, made shortly prior to CAR 1, that the documents were "nearly complete" was knowingly false--or false at all.[5]

---

[3] *Accord Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001); *Chill v. Gen. Elec. Co*., 101 F.3d 263, 268 (2d Cir. 1996).

[4] *See id.*; *JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 534 (S.D.N.Y. 2013) (plan that contains "the seeds of its own inevitable failure" cannot support a strong inference of fraudulent intent); *compare  In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 74-75 (2d Cir. 2001) (allegations that defendant sold 80% of his stock holdings for substantial profit shortly after making the fraudulent statements adequately alleged motive).

[5]  NYW also argues that it can show "recklessness." (Opp. 9.)  That, however, was not pled.  In any event, to show recklessness, NYW would have to allege facts "that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Chill*, 101 F.3d at 268-69.  No such showing has been made.  (*See* Br. 10.)  While NYW further asserts that intent to defraud can be inferred from a "course of dealing" (Opp. 8), the "dealings" relied on are the same alleged misrepresentations about the status of the drawings prior to CAR 1 and CAR 2

(d)     As to the requirements of Rule 9(b):

--  NYW does not contest that it failed to allege any misrepresentations by **anyone** from Starneth LLC, SBV, or MAH, but argues that it made a "group pleading," which it claims is sufficient. (Opp. 10.)  However, the cases cited by NYW, *Vantone* and *Strunk*, arose under Rule 8, not Rule 9(b), which requires that the speakers and what they said be pled with particularity.  And, even under Rule 8, NYW's pleading would be defective, as it fails to identify or distinguish any conduct by each of these defendants (*see* p. 1 above);

-- With respect to MUSA-North and MHBV, NYW argues that representations were made by Messrs. de Vries and Smit, respectively, and that those individuals in general held positions in those companies.  However, the SAC makes clear that, at the time the representations were allegedly made, Messrs. de Vries and Smit were acting in their capacities as representatives of the **DBT**.  (Br. 10);[6] and

-- NYW does not deny that it failed to plead where the misrepresentations were made.

Third, the cases cited by NYW concerning the DBA's merger/non-reliance clause (Opp. 11) do not reflect current law where sophisticated parties are involved.  The current law is as stated in our opening brief (Br. 11).[7]

Fourth, while NYW argues (Opp. 12) that the alleged fraud caused it to pay some portion of the $20 million increase in the Contract Sum effectuated under CAR 1 and CAR 2, that was not pled, as required by Rule 9(g).  There are no allegations that NYW made payments to the DBT in excess of the original $145 million Contract Sum or made progress payments in excess of what would have been paid absent CAR 1 or CAR 2--so no actual damage can be shown. While NYW alternatively argues that it has asked for rescission of CAR 1 and CAR 2,  the point

---

that underlie its fraudulent inducement claims--which are themselves wholly conclusory and speculative.  *See Wexner v. First Manhattan Co.*, 902 F.2d 169, 173 (2d Cir. 1990) (inference of intent to defraud cannot be based on "allegations which are themselves speculative").

[6] The same is true for the representations allegedly made by Mr. ten Holter, who NYW concedes (Opp. 10) held a position with Mammoet Solutions, not with any of the NDDs.

[7] *See also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 105 (2d Cir. 2007) (reasonable reliance cannot be established "[w]here the plaintiff is a sophisticated investor and an integrated agreement between the parties does not include the misrepresentation at issue").

is moot.  Those amendments long ago became part of the DBA, which has now been terminated--so there is nothing of CAR 1 or CAR 2 left in existence to "rescind."

## II.    COUNT 6 OF THE SAC SHOULD BE DISMISSED.

NYW's arguments on Count 6 similarly should be rejected.

<u>First</u>, while NYW's argues that the misrepresentation alleged in Count 6 was collateral to the DBA, it plainly was not.  Count 6  (¶ 516) alleges that the NDDs "falsely represent[ed] that the DBT would enter into all subcontracts related to the Project, as required by Section 2.2 of the Agreement."  That is an alleged misrepresentation of intent to perform--nothing else.

No doubt recognizing this, NYW argues that the alleged misrepresentation went to the "scope of the carve-out and the contracts that would be subject to it."  (Opp. 14.)  While NYW is, of course, bound by its pleading, that characterization adds nothing, since an alleged misrepresentation about the meaning of a prospective contract does not state a claim for fraud.[8]

<u>Second</u>, while NYW asserts that it has complied with Rule 9(b), the SAC contains no allegations setting forth who made the misrepresentations, what specifically was said or when or where the misrepresentations were made.  The paragraphs of the SAC cited by it (Opp. 13, citing ¶¶ 74-79, 387, 512, 515) supply **none** of these required factual allegations.[9]

---

[8] *E.g.*, *MFW Assocs., LLC v. Plausteiner*, 2017 WL 1057311, at *5, *7 (S.D.N.Y. Mar. 16, 2017) (claim that lender misrepresented scope of prospective release goes to anticipation of what such contract would provide and future compliance with it, and does not state a claim for fraudulent inducement); *accord*, *Bloom v. Rock*, 2010 WL 2267468, at *7 (S.D.N.Y. May 27, 2010); *PFT of Am., Inc. v. Tradewell, Inc*., 1999 WL 179358, at *3 (S.D.N.Y. Mar. 31, 1999).

[9] NYW also argues opportunity and motive, and recklessness.  (Opp. 14-15.)  Its apparent theory on motive is that, prior to March 2014, the NDDs anticipated that, years later, the DBA would be terminated and contracted with subcontractors themselves in order to "frustrate Developer's right to salvage the Project" when that happened.  That, however, is rank speculation and defies economic reason, as preventing Developer from salvaging the Project would not only fail to advance any economic interest of the NDDs but effectively ensure that any outstanding amounts due the DBT at the time of termination would not get paid.  *See Shields*, 25 F.3d at 1130; *Feiner Family Tr. v. Xcelera.com, Inc*., 2008 WL 5233605, at *5 (S.D.N.Y. Dec. 15, 2008), *aff'd*, 352 F.

<u>Third</u>, while NYW contends that its past reliance on the alleged misrepresentation is "evident" (Opp. 15), it does not contend that reliance was pled.  Nor could it plausibly have been pled, since, under the DBA's plain terms, subcontracts need not be entered into solely by the DBT.  (*See* Br. 32.)  In all events, reliance is precluded under the DBA's merger/non-reliance clause.  (*See* p. 5 above.)

<u>Fourth</u>, contrary to NYW's assertions (Opp. 15), the damages allegedly suffered in Count 6 were not due to the alleged fraud.  They were incurred (if at all) because, and only because, of the DBT's alleged breach of Section 2.2--absent the alleged breach by the DBT, no damages would have been incurred.  *See Semerdjian v. McDougal Littell*, 2008 WL 110942, at *3 (S.D.N.Y. Jan. 2, 2008).  And, the damages claimed in Count 6 are clearly the same as those claimed in Count 9 ("Failure to Assign Subcontracts," *see* ¶¶ 551-57), and are also covered in Count 5 (¶¶ 502-03, 505).

## III.   COUNT 10 OF THE SAC SHOULD BE DISMISSED.

Count 10 of the SAC fails to state a claim.

<u>First</u>, the allegations of intentional interference are wholly conclusory. Once again, NYW has failed to distinguish the conduct alleged against the individual NDDs.  And, contrary to NYW's assertions (Opp. 17), the SAC contains no factual averments plausibly showing that the any--let alone all--of the individual NDDs caused the DBT to have contracts entered into by other entities, as opposing to the DBT's deciding to do that on its own:  merely alleging that the NDDs's "induced" the DBT to breach, and adding the buzzwords "maliciously and tortiously,"

---

App'x 461 (2d Cir. 2009); *In re Health Mgmt., Inc. Sec. Litig.*, 970 F. Supp. 192, 202 (E.D.N.Y. 1997).  As to "recklessness," that was not pled.  Nor does any non-frivolous argument on recklessness exist.  The DBA, by its terms, does not require that all subcontracts be done through the DBT.  (*See* Br. 32.)  Thus, even assuming, *arguendo*, that the NDDs at one time told NYW they interpreted of Section 2.2 to contain such a restriction, their subsequently rejecting that incorrect interpretation cannot conceivably constitute a reckless disregard of the truth.

does not suffice.  Likewise, on the issue of intent, NYW (Opp. 18) fails to identify any factual allegations supporting an inference that any one or more of the NDDs were the motivating actors. Elsewhere in the SAC, NYW alleges that the DBT itself was the driving force behind the allegedly improper subcontracts.  (*E.g.*, ¶¶ 14, 502-03.)

Second, on the issue of "but for" causation (Opp. 19-20), NYW cites *Four Finger Art Factory, Inc. v. Dinicola*, 2001 WL 21248, at *6 (S.D.N.Y. Jan. 9, 2001).  That case does not help it.  In *Dinicola*, the complaint, taken as a whole, sufficiently alleged that the breaching party "would have completed its obligations under the contract if [the defendant] had not interfered"-- such that "but for" causality was pled.  *Id*. at *7.  Here, by contrast, there are no allegations that, but for the alleged interference, the DBT would have complied with Section 2.2 as construed by NYW.  Rather, NYW has alleged, as integral (not "alternative") parts of the SAC, that the DBT itself both lied about its intention to comply with Section 2.2 and deliberately and intentionally breached that Section. (¶¶ 382-83, 502-03, 516.)

Third, concerning the import of NYW's *alter ego* allegations on Count 10, NYW's sole response is that NYW has a right to plead in the alternative.  (*See* Opp. 20.)  That, however, is not what NYW did.  Rather, it incorporated its *alter ego* allegations directly into Count 10.  (*See* Br. 15.)  There was--again--nothing "alternative" about it.

Fourth, NYW's argument on privilege (Opp. 21-23) fails because the SAC plainly alleges that the NDDs entered into subcontracts to protect an economic interest--to create leverage over NYW in the event the DBA was terminated.  (¶¶ 566, 568.)  NYW's conclusory assertion that the NDDs acted "maliciously" is inadequate to overcome the privilege.  (*See* Br. 16 n.14.)

## IV.    COUNT 11 OF THE SAC SHOULD BE DISMISSED.

NYW's argument concerning the lack of a third-party breach is refuted by our prior discussion (Br. 17), which will not be repeated here.  Suffice it to say that the Court of Appeals

has consistently listed breach by a third-party as a necessary element of a tortious interference claim, and that New York federal and state courts, before and after *Italverde*, have dismissed tortious interference claims where only a breach by the plaintiff was alleged.  (*Id*.)

NYW's remaining contentions are likewise without merit.

First, in arguing that a tortious interference claim can be predicated on conduct occurring before the relevant contract came into existence, NYW cites *Kronos, Inc. v. AVX Corp*., 612 N.E.2d 289, 292 (N.Y. 1993).  *Kronos*, however, held only that an otherwise validly-pled tortious interference claim accrues when the harm is suffered, which has no bearing on the issue here.  NYW's argument on "continuing misrepresentation" is equally groundless, as nothing in Count 10 alleges that the NDDs "failed to withdraw" the alleged misrepresentation.  Moreover, any purported "failure to withdraw," by the NDDs, could not have caused the alleged harm. Once the loan amendment was executed, the projected milestones became contractual deadlines thereunder, irrespective of whether the NDDs "withdrew" their alleged representations.  Thus, at most, NYW is left with a contention that, after the loan amendment was executed, the NDDs "failed to cause" the DBT to meet the projected milestones.  But NYW makes no claim that that alone constituted tortious interference--nor could it, since NYW has alleged that the projected deadlines could not be met, and the NDDs could not have tortiously interfered by failing to cause the DBT to do something that was impossible to do.

Second, while NYW argues that it met the pleading standards of *Iqbal/Twombly* and Rule 9(b), its discussion does nothing to rebut the showing made in our opening brief. at 18-19, to which, in the interest of avoiding repetition, we respectfully refer the Court.

Third,  NYW contends that its allegations here are not nonsensical because the NDDs were seeking to "manufacture" a payment dispute by creating a situation wherein NYW "could

9

not pay the DBT," which would allow the DBT to stop work  (Opp. 28.)  That conjecture finds

no support in the SAC--there is no allegation of a payment dispute because NYW was unable to

pay.[10]  Moreover, the misrepresentations were allegedly made in 2016 and NYW made no

payments to the DTB since November 2016 (¶¶ 290, 327), yet the DBT did not suspend work

until May 2017 (¶ 344).  If the secret plan was to force NYW to miss payments so the DBT

could stop work, why did the DBT continue working for more than 5 months without pay?

## V.    COUNT 12 OF THE SAC SHOULD BE DISMISSED.

Count 12, premised on the same essential allegations as Count 11 but claiming negligent

misrepresentation, should be dismissed.  Taking NYW's arguments in turn:

First, NYW's argument on "special relationship" fails for the reasons set out in our

opening brief at 21-23.  While NYW contends that the project milestones related to scheduled

completion dates on a complicated project, the alleged misrepresentations pertained to project

scheduling, not the design, engineering or other technical aspects of the Wheel, and the SAC

does not allege that the NDDs had any expertise or involvement in project scheduling.  In this

regard, NYW had its own consultant who was charged with monitoring the progress of the Work

(DBA, p. 2, second "whereas" clause), and the DBA made clear that project schedules could be

impacted by multiple external events, as reflected in § 5.2.2.  The SAC (¶¶ 214, 593) alleges

only that NYW asked the NDDs to identify projected dates for certain future milestones, and that

the NDDs did so.  That was purely arms-length; no "trust or confidence" was involved.[11]

---

[10] Rather, the SAC alleges that NYW was prepared to pay valid invoices and refused to pay only because it had not come to final agreement with the DBT on all invoiced items (even though that was not contractually required).  (¶ 327.)

[11] By contrast, in the cases cited by NYW, there was clear and justified reliance on expert advice. In *Those Certain Interested Underwriters*, 2015 WL 5602924, at *34 (N.D.N.Y. Sept. 23, 2015), the representations were made by the installer of a specialized sports arena dome, after the installation had been completed and the contractual relationship had  ended, concerning a

<u>Second</u>, NYW argues that a promise of future conduct is actionable on a negligent misrepresentation claim if the defendant did not intend to honor the promise when made.  (Opp. 20 (quoting *Murray*, 811 F.2d at 121.))  However, a false representation of state of mind sounds (in a non-*Bridgestone/Firestone v. Recovery Credit Servs.* context) in fraud, and NYW's quote comes from the portion of *Murray* discussing fraud, not negligent misrepresentation.  As to the latter, *Murray* holds that a promise of future conduct is **not** actionable.  *Id.* at 123-24.

<u>Third</u>, NYW has failed to refute our showing that the SAC contains no factual allegations supporting an inference that the milestone projections were negligently made.  (*See* Br. 23-24.)

<u>Fourth</u>, NYW effectively concedes that it has not alleged any misrepresentations by Starneth LLC, SBV or MAH, and has no substantive response to the defects in its pleading as against MUSA-North and MHBV.  (*See* Br. 24.)

<u>Fifth</u>, NYW cites one case for the proposition that the economic loss rule does not apply where a special relationship exists.  (Opp. 32)  The weight of authority is to the contrary.  (*See* Br. 24; *see also Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 220 (S.D.N.Y. 2007).)[12]  In any event, there was no "special relationship" here (*see* p. 10 above).

---

technical problem with the dome.  In *Kimmell v. Schaefer*, 675 N.E.2d 450, 454-55 (N.Y. 1996), defendant affirmatively induced plaintiff to invest in the project, generated projections for the express purpose of soliciting investors and told plaintiff he could provide plaintiff with comfort if plaintiff had any reservations about investing.  In both *Ossining Union Free Sch. Dist. v Anderson LaRocca Anderson*, 73 N.Y.2d 417, 420 (N.Y. 1989), and *Anita Terrace Owners, Inc. v. Goldstein Assocs. Consulting Engineers, PLLC*, 2013 WL 3485141, at *9 (Sup. Ct. Queens Cty. July 12, 2013), professional engineers gave negligent engineering advice.

[12] *Consol. Edison Co. of New York v. Westinghouse Elec. Corp.*, 567 F. Supp. 358, 363-66 (S.D.N.Y. 1983), cited at Opp. 32, involved negligent performance of contract, not negligent misrepresentation, which is different.  *See Cohen v. Avanade*, 874 F. Supp. 2d 315, 326-27 (S.D.N.Y. 2012) (Furman, J.).  Moreover, it is questionable whether a cause of action for negligent performance of services currently exists under New York law, at least without the presence of a duty of care that arises independent of the parties' contract.  *See id.* at 326; *B & M Linen, Corp. v. Kannegiesser USA, Corp.*, 2013 WL 1142679, at *6 (S.D.N.Y. Mar. 19, 2013).  Either way, there was no contract between NYW and the NDDs here.

Sixth, NYW's arguments on §§ 19.10 and 19.20 (Opp. 32-35) are baseless. With respect to § 19.10, NYW's claim of negligent misrepresentation clearly "arises" from the Work and the DBA--NYW contends that the NDDs negligently misrepresented the projected schedule for work under the DBA, not for work under some other contract.  And, the Delaware cases cited by NYW,[13] purporting to limit a clause like § 19.10 to contract claims, do not accurately reflect New York law, which prohibits disclaimers of liability only for fraudulent or grossly negligent conduct.  (*See* Br. 25.)[14]  S*ee also EJS-Asoc Ticaret Ve Danismanlik Ltd. STI. v. Am. Tel. & Tel. Co.*, 1993 WL 288289, at *2-3 (S.D.N.Y. July 28, 1993) (applying similar clause to bar claim for negligent misrepresentation); *Educ. Ctr. for New Americans, Inc. v. 66th Ave. Realty Co*., 15 N.Y.S.3d 385, 386 (App. Div. 2015) (exculpatory clause in lease precluded imposition of liability against non-landlord defendant).

As to § 19.20, NYW argues only that exculpatory clauses will not preclude a claim for gross negligence (which NYW says applies to § 19.10 as well).  That is true, but irrelevant, as gross negligence has not been pled.  Moreover, gross negligence requires a showing of "conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing," *Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd*., 611 N.E.2d 282, 284 (N.Y. 1993), and must be supported by non-conclusory allegations of "'conduct of an aggravated character,'" *Kinsey v. Cendant Corp*., 2005 WL 1907678, at *7 (S.D.N.Y. Aug. 10, 2005).  NYW's rhetoric aside, no such conduct has plausibly been alleged.

---

[13] *LaSalle Nat. Bank v. Perelman*, 141 F. Supp. 2d 451, 462 (D. Del. 2001); *Wilmington Tr. Co. v. Hellas Telecomms, S.à.r.l*., 2016 WL 7339112, at *13 (S.D.N.Y. Aug. 4, 2016).

[14] Consistent with this, two of the three New York cases cited therein say only that a "no recourse" provision will not protect a defendant from a claim of fraud.  *Bankers Trust Co. v. Hale & Kilburn,* 84 F.2d 401, 405 (2d Cir. 1936); *Small v. Sullivan*, 157 N.E. 261, 264-65 (N.Y. 1927).  In the third case, *Caplan v. Unimax Holdings Corp*., 591 N.Y.S.2d 28, 29 (App. Div. 1992), which did not involve fraud, the limitation of liability was upheld.

## VI.    COUNTS 13-17 OF THE SAC SHOULD BE DISMISSED.

NYW's opposition on its *alter ego* claims confirms why those claims should be dismissed, as discussed below.  Preliminarily, we agree that Rule 8 does not require "proof of alter ego at the pleading stage." (Opp. 35.)  However, to survive a motion to dismiss, NYW cannot "merely parrot the legal conclusions from alter ego cases without providing the necessary underlying factual detail." *Am. Lecithin Co. v. Rebmann*, 2017 WL 4402535, at *13 (S.D.N.Y. Sept. 30, 2017).  For *alter ego* allegations, no less than for other allegations, NYW must "plead[] factual content" sufficient to meet the plausibility standard.  *Paradigm BioDevices, Inc. v. Centinel Spine, Inc.*, 2013 WL 1830416, at *2 (S.D.N.Y. May 1, 2013) (Furman, J.).

NYW repeatedly seeks to excuse its failure to have met this standard by claiming that discovery is needed.  (*E.g.*, Opp. 21, 39-42.)  But that turns *Iqbal* and *Twombly* on their head..  Under those cases, the claims in a complaint must be supported by plausible, factual allegations; if the plaintiff cannot make such allegations, the claims should not be brought; and, if, as here, claims are brought without the requisite factual and plausible predicate, they must be dismissed.

### A.    The SAC's Allegations of Exclusive Domination and Control Over the DBT Are Inadequate under *Iqbal* and *Twombly*

In our opening brief, we demonstrated that if each of the NDDs had control and domination over the DBT, as NYW has alleged, then (a) none of them could have complete and exclusive control as required under Delaware law and (b) all of the NDDs would have to constitute, collectively, a single economic unit, which plainly they do not.  (Br. 40-41.)  Faced with that,  NYW argues that its *alter ego* claims were asserted in the "alternative."  (Opp. 42.)  As is apparent from Counts 13-17, they were not.  But, even if those Counts had used the phrase "in the alternative" in their headings, that would not change the result.  Wholly apart from the Counts themselves, NYW has alleged, throughout its Statement of Facts, that all of the NDDs

13

had at least some simultaneous control over the DBT--with nothing "alternative" about it.  (*E.g.*, ¶¶ 56, 64, 398, 400, 402-03, 408, 421.)  *A fortiori*, none of the NDDs can be an *alter ego* of the DBT under Delaware law.

This, of course, comes as no surprise to NYW.  MUSA-North, Starneth LLC, MHBV and SBV had made this same point in their prior motions to dismiss.  (*See* Dkt. #111 at 14; Dkt. #114 at 8-9.)  Following those motions, NYW chose to amend but, in the SAC, left these allegations intact.  While NYW may, in hindsight, now regret that decision, that was the decision it made and it must now accept the ensuing consequences--the *alter ego* claims must be dismissed.

While the foregoing is dispositive, the *alter ego* claims also fail to meet the standards of *Iqbal* and *Twombly* for other reasons.

With respect to the *Fletcher* factors, NYW's own discussion shows that, with respect to those factors, the SAC contains no factual allegations giving rise to a plausible inference that they have been met.  Specifically, and with regard to the list set out at Opp. 37:

>    -- The allegation concerning whether the DBT was "inadequately capitalized" for its intended business purpose (¶ 423) is a nearly verbatim recitation of that factor, made on information and belief but without any supporting factual information provided;
>
>    -- The allegations concerning whether the DBT was solvent do not address solvency during the course of performance, but instead quote the DBT's counsel for the unrelated proposition that, as of July 2017, following NYW's failure to have made any payments for the last several months and the resulting suspension of work, the DBT had a need for cash flow and needed to protect its balance sheet (¶¶ 425, 427);
>
>    -- The allegations concerning whether corporate formalities were followed merely parrot the language of the factor, make bald assertions on information and belief without providing any supporting factual information and make bald assertions about formalities (board and membership meetings) that are not legally required for LLCs (¶¶ 417, 436);
>
>    -- The allegations concerning whether the NDDs "siphoned" corporate funds merely recite the language of the factor without any underlying factual averments supporting an inference that any of NDDs actually took funds from the DBT to use for purposes unrelated to the project, as would be necessary for "siphoning" to exist (¶¶ 410, 414; *see* Br. 30-31).  The allegation in ¶ 410 is made on information and belief, where the information provided (a "lack of public claims against the [NDDs]") does not even

14

arguably support a plausible inference that improper "siphoning" took place; and, the allegation in ¶ 414 (conclusory label aside) is fully and indeed more consistent with the DBT's paying funds to one or more of the NDDs so that the NDDs in turn could pay subcontractors for their work on the project, which would not constitute "siphoning" (*see* Br. 31-32); and

-- The allegations concerning whether the DBT functioned as a "façade" for the NDDs are wholly conclusory and simply recite the legal conclusions that the NDDS "exercised domination and control" over the DBT and that the DBT was a "mere instrumentality" of the collective NDDs (¶¶ 400, 416).  Moreover, the allegation in ¶ 400, far from suggesting that the DBT was a "façade" for any of the NDDs, shows, if anything, that the DBT and the NDDs operated as separate and distinct legal entities.

Presumably, in creating its list, NYW hand-picked the allegations that it thought best showed that the *Fletcher* factors had been met.  As demonstrated, they do not, but show only how short of the *Iqbal/Twombly* pleading standard the *alter ego* claims fall.  Consistent with this, NYW cites no case holding, on such conclusory and unsupported allegations, that a claim for *alter ego* liability under Delaware law has been adequately pled.[15]

NYW's remaining arguments on the sufficiency of its allegations are equally groundless.  At Opp. 38 and 42, it again asserts that the DBT was "undercapitalized" for its business purpose, without any discussion of why that might be, particularly given the very substantial cash flows that the DBT was expected to receive under the DBA (*see* Br. 29).  At pp. 36 and 40-41, NYW asserts that assets were "stripped away" from the DBT, but fails to identify any factual

---

[15] *Compare Paradigm BioDevices,* 2013 WL 1830416, at *2 (complaint alleged, *inter alia*, as regards factor of inadequate capitalization, that "Centinel … owed millions of dollars in debt at its inception …  including eight million dollars owed on financing it obtained in 2008 and 2009 … and fifteen million dollars owed to Surgicraft shareholders," merged with a company that "was losing $500,000 to $600,000 a month" and had no "systems in place to sell product"), and, as regards factor of siphoning of funds, alleged that "Centinel has paid VB and its affiliates '[o]ver $2 million … while other, more substantial creditors … have not been paid anything"); *cf. John Deere Shared Servs., Inc. v. Success Apparel LLC*, 2015 WL 6656932, at *5 (S.D.N.Y. Oct. 30, 2015) (Furman, J.)  (New York law; complaint alleged, *inter alia*, that defendant owned 80% of the company with her daughters who were minority shareholders and fraudulently transferred to herself corporate assets in the form of expense payments which left the company unable to meet its financial obligations to plaintiff).

allegations that the NDDs actually took, for themselves and their own purposes, assets that, prior to the "taking," had been owned by the DBT.[16]  (*See also* p. 2 above.)  And, at pp. 41-42, it repeats, without supporting citations, accusations (items (3)-(6) on those pages) that, as shown in our opening brief, are factually unsupported; even if true, those allegations would not show that any of the NDDs the exercised complete and exclusive control over the DBT, as is required for *alter ego* liability to be found.  (*See* Br. 27-28.)[17]

> **B.**  **The SAC Fails Plausibly to Plead that the DBT's Corporate Form Was Established or Used to Perpetuate any Injustice or Fraud.**

NYW's contention that the requisite fraud or injustice is present here because the DBT may be unable to satisfy a judgement (Opp. 43) is untenable, since, as discussed at p. 1 above, NYW knowingly took the risk of contracting with an entity that it believed to be a "shell company" without obtaining any guarantees or other security.  This alone disposes of its *alter ego* claim as a matter of law.  *See Brunswick*, p. 1 above; *Favour Mind Ltd. V. Pacific Shores, Inc.*, 2004 WL 97649, at *7 (S.D.N.Y Jan. 20, 2004) ("Where a party is aware of the risks of dealing with a corporation, that party has assumed the risk of such dealings.").  NYW's cases are consonant--none found that, in these circumstances, fraud or injustice was or could be present.

NYW's other arguments on fraud or injustice (Opp. 43-44) likewise lack merit.

---

[16] NYW's argument here on the Instruments of Service further is inconsistent with the SAC, which alleges that the Instruments of Service are in the control and possession of both Starneth LLC and the DBT (¶ 370).  NYW also refers to subcontracts it alleges were entered into by the NDDs, but (a) the subcontracts were not "assets" of the DBT (*see* Br. 32), (b) NYW does not allege that any subcontracts were initially entered into by the DBT and then taken by any of the NDDs and (c) NYW has admitted that, in allegedly entering into subcontracts directly, the NDDs were acting in accordance with their understanding of the DBA (*see* ¶ 82.)  NYW also makes assertions about "prioritization" of payments that are not supported by the allegations in the SAC cited by it (¶¶ 408, 410, 414), and in any event make no sense since there is no contention that any payments to subcontractors, "prioritized" or not, were made for purposes unrelated to the project.

[17] Items (3)-(6) from pp. 41-42 of NYW's opposition are discussed, respectively, at:  Br. 34 n.29 and 38 & n.36; Br. 34-35 & n.30, 36 & nn.32-33; Br. 36-38 & nn.34-35; and, Br. 39.

<u>First</u>, NYW's assertion that, after the DBT was formed, the NDDs intentionally took funds that would otherwise be available to the DBT to satisfy a judgment, is made without reference to any supporting factual allegations; none exists.[18]

<u>Second</u>, NYW's argument that the requisite injustice arises from its inability to have obtained assignments of all subcontracts is nothing short of bizarre, given that, according to its own submission, NYW had not, as of October 24, 2017 (*i.e.*, more than three months after the DBA was terminated), decided whether it even wanted to take assignment.  (Dkt. #178-5, at 1.) Moreover, to the extent NYW claims injustice because some subcontracts were allegedly held by the NDDs, that does not show an abuse of the DBT's corporate form but, if anything, shows that the DBT and the NDDs are and were separate and distinct.  Finally, NYW does not dispute that the fraud or injustice required here must be different from the harm claimed in the underlying causes of action.  (*See* Br. 41; *McBeth v. Porges*, 171 F. Supp. 3d 216, 234 (S.D.N.Y. 2017).) However, the "injustice" it points to, namely, difficulties in "transitioning the Project to new contractors," is precisely the harm claimed in Count 6 (as NYW admits at Opp. 15) and Count 9 ("Failure to Assign Subcontracts"), and is also covered by Count 5 (*see* p. 7 above).

<u>Third</u>, NYW's reference to the bankruptcy case (Opp. 43-44) is not apropos since the DBT's December 2017 bankruptcy filing is not mentioned in the SAC, and obviously has no bearing on whether, during the life the DBA, there was any abuse of the DBT's corporate form.

---

[18] NYW's citations (Opp. 43) to *Winner Acceptance Corp. v. Return on Capital Corp.*, 2008 WL 5352063, at *5-6 (Del. Ch. Dec. 23, 2008), and *Paradigm*, are far afield.  In *Winner,* the injustice prong was met where the defendant had misrepresented that the entity was "a well-funded, established company," when in fact it had not yet been incorporated, and provided false documents about the entity's "viability and operations."  In *Paradigm*, 2013 WL 1830416, at *3, the injustice element was met where the subject company, with which the plaintiff had not contracted, had been created for the "sole purpose" of depriving the plaintiff of payments to which it was contractually entitled.

17

**C.    Counts 13-17 Also Should Be Dismissed for Reasons Independent of NYW's Failure Plausibly to Allege *Alter Ego***

In our opening brief (at 44-45), we demonstrated that Counts 13-17, which allege, on *alter ego* grounds, all of the substantive claims in Counts 1-12, should be dismissed even if the Court were to decline to dismiss Counts 13-17 for the reasons set forth at pp. 13-17 above.

With respect to Counts 4, 6, 10, 11 and 12, NYW has no response.  Thus, the NDDs' arguments with respect to those Counts are uncontested.

With respect to Counts 1-3, 5 and 7-9, all of which sound in contract, those claims are precluded under § 19.10 of the DBA (discussed at p. 12 above).  NYW argues that § 19.10 cannot apply because claims based on an *alter ego* theory are claims for fraud (Opp. 44, citing *LaSalle*, 141 F. Supp. 2d at 463.) [19]  However, *alter ego* is simply a vehicle for imposing substantive liability on defendants that would otherwise not be subject to it; that is why, in Counts 13-17, the named defendants are the NDDs.  The *alter ego* doctrine does not, however, transform the nature of the underlying cause of action.  As previously discussed, the contract claims alleged in Count 1-3, 5 and 7-9 cannot be asserted against the NDDs, which are not parties to the DBA, because the standards that would allow NYW to pierce the corporate veil so as to assert those claims against them have not been met.  But, even if they have, the contract claims against the NDDs are substantively precluded under § 19.10, which is fully enforceable under the governing New York law.  *See EJS-Asoc*, 1993 WL 288289, at *2, and *Educ. Ctr. for New Americans,* 15 N.Y.S.3d at 386, both discussed at p. 12 above; *see also* Br. 25, 44.

<u>Conclusion</u>

For the reasons stated above and in their prior submissions, the NDDs' motion to dismiss should be granted and all Counts of the SAC against them should be dismissed, with prejudice.

---

[19] The *LaSalle* case actually says that a claim for *alter ego* is equitable.  *See id.* at 463; *see also* p. 12 & nn.13-14 above.

Dated: January 16, 2018
        New York, N.Y.

                        Respectfully submitted,

                        DENTONS US LLP

                        By:     */s/ Philip R. White*
                                Philip R. White
                                phil.white@dentons.com
                                Anthony B. Ullman
                                anthony.ullman@dentons.com
                                Jonathan S. Jemison
                                jonathan.jemison@dentons.com
                                1221 Avenue of the Americas
                                New York, NY  10020-1089
                                Telephone:     (212) 768-6700
                                Facsimile:     (212) 768-6800

                        *Attorneys for Defendants Mammoet
                        USA North Inc., Starneth LLC,
                        Mammoet USA Holding, Inc.,
                        Mammoet Holding B.V. and Starneth B.V.*

19