UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
NEW YORK WHEEL OWNER LLC and NEW YORK :
METROPOLITAN REGIONAL CENTER, L.P. II, :
:
                    Plaintiffs, :        17-CV-4026 (JMF)
:
          -v- :        OPINION AND ORDER
:
MAMMOET HOLDING B.V., STARNETH B.V., :
MAMMOET USA HOLDING, INC., MAMMOET USA :
NORTH, INC., and STARNETH LLC, :
:
                  Defendants. :
:
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       This litigation arose after a plan to build a massive observation wheel on Staten Island, similar to the London Eye — dubbed the "New York Wheel" — fell apart. More than three years and countless hours of work by both the parties and the Court later, the litigation itself fell apart. The reason: Plaintiff New York Wheel Owner LLC ("NYW") discovered that, contrary to the allegations set forth in its original Complaint, the parties were not actually completely diverse when the case was filed, thus defeating the sole basis for federal subject-matter jurisdiction. The Court promptly dismissed the case, as it was required to do. *See* ECF No. 305; *see also Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 321-22 (2d Cir. 2001).

       Understandably frustrated by the waste of resources arising from NYW's error, several Defendants — Mammoet Holding B.V., Mammoet USA Holding, Inc., and Mammoet USA North Inc. (together, the "Moving Defendants") — now move, pursuant to the Court's inherent authority, for sanctions against NYW. *See* ECF No. 326; *see also* ECF No. 327 ("Defs.' Mem."), at 18 & n.20. The Court shares the Moving Defendants' frustration. Upon review of

the record, however, it cannot find that NYW's error was made in bad faith, which is a prerequisite to imposing sanctions pursuant to the Court's inherent authority. Accordingly, and for the reasons that follow, the Moving Defendants' motion for sanctions is denied.

## BACKGROUND

From beginning to end, four complaints were filed in this case. NYW was the sole Plaintiff named in the first three complaints and was represented, when each of these three was filed, by the law firm of Gibson Dunn and Crutcher, LLP ("Gibson Dunn"). The original complaint named only one Defendant — Mammoet-Starneth LLC ("Mammoet-Starneth") — and cited only one basis for jurisdiction: diversity jurisdiction pursuant to 28 U.S.C. § 1332. ECF No. 1, ¶ 15. The first and second amended complaints added parties, but diversity remained the sole basis of jurisdiction. ECF No. 59, ¶ 23; ECF No. 149, ¶ 24. In particular, NYW alleged that it was "a Delaware limited liability company," the members of which were "citizens of New York and New Jersey" only, while Defendants — or their members — were citizens of the Netherlands, California, Delaware, Florida, and Texas. ECF No. 1, ¶¶ 13-14; ECF No. 59, ¶¶ 17-22; ECF No. 149, ¶¶ 17-23.

From December 2017 to August 2019, the case was largely dormant, the result of Mammoet-Starneth and another Defendant declaring bankruptcy and the remaining parties signing "a conditional global settlement agreement, subject to certain conditions, that provide[d] a standstill of all actions until September 6, 2018." ECF No. 187. For reasons not relevant here, the settlement later fell apart and, on August 26, 2019, NYW moved to reopen the case. *See* ECF No. 210. Just before that happened, though, NYW moved to substitute the law firm Dovel and Luner LLP (" ("Dovel and Luner") — its current counsel — for Gibson Dunn, a motion the Court granted on August 22, 2019. *See* ECF Nos. 206, 208. A little over one month later, NYW

filed a Third Amended Complaint.  *See* ECF No. 214.  The Third Amended Complaint added a second Plaintiff — New York Metropolitan Regional Center, L.P. II, "an investment partnership and lender" to NYW.  *Id.* ¶ 11.  Like the first three complaints, the Third Amended Complaint alleged the existence of diversity jurisdiction and that NYW's members were "citizens of New York and New Jersey."  *Id.* ¶¶ 10, 19.

On August 21, 2020, the Court issued a fifty-four-page Opinion and Order resolving four separate motions, including Defendants' motion to dismiss the Third Amended Complaint.  *See N.Y. Wheel Owner LLC v. Mammoet Holding B.V.*, 481 F. Supp. 3d 216 (S.D.N.Y. 2020) (ECF No. 282).  The Court scheduled a conference to set a discovery schedule, *see* ECF No. 283, but just before the conference, on October 15, 2020, NYW revealed in a joint letter that the allegations in the Third Amended Complaint regarding its citizenship might be inaccurate, *see* ECF No. 298, at 4.  "Plaintiff New York Wheel Owner LLC," the letter stated, "is a Delaware limited liability company with members that are citizens of New York and New Jersey."  *Id.*  But, it continued, "New York Wheel Owner LLC *also* has a number of additional minority investor members whose citizenship had not been adequately determined previously."  *Id.* (emphasis added).  NYW requested time "to collect and analyze the complicated set of information — including from third party investor member entities — that [was] needed to determine whether it [could] continue to assert diversity jurisdiction over its claims."  *Id.*

In the investigation that followed, NYW confirmed the unfortunate conclusion that it could not continue to assert diversity jurisdiction.  ECF No. 300, at 1.  The sole member of NYW is (and, more to the point, at the time the initial complaint was filed, was) New York Wheel Mezz, LLC, whose sole member, in turn, is New York Wheel Investor LLC ("NYW Investor").  ECF No. 328-1; *see also* ECF No. 341-1.  NYW Investor, in turn, has at least twenty members,

3

many of whom are limited liability companies with members of their own. *See* ECF No. 328-3. At least one NYW Investor member, Houlihan Lokey Capital Inc. ("Houlihan Lokey"), is a citizen of California, ECF No. 328-5, at 15, 28; ECF No. 328-6; ECF No. 328-7, of which Defendant Mammoet USA North, Inc. is also a citizen, *see* ECF No. 214, ¶ 15.[1] Other members of NYW Investor have addresses in New York, Illinois, Connecticut, Maryland, Texas, and Massachusetts. *See* ECF No. 328-5. And on top of that, at least two NYW Investor members (of which Richard Marin, the CEO of NYW, was a director at the time this suit was filed) were foreign citizens. *See id.* at 6, 27; ECF No. 328-8, at 3; ECF No. 328-10, at 1. The net result is that, contrary to the allegations in all four complaints, the Court did not have diversity jurisdiction after all. With NYW's consent, the Court therefore dismissed all claims, counterclaims, and third-party claims. ECF Nos. 303, 305.[2]

Thereafter, the Moving Defendants indicated that they "intend[ed] to pursue sanctions based on the failure of NYW to disclose jurisdictional facts that reveal the absence of diversity jurisdiction until three years of litigation had passed." ECF No. 306, at 6. In anticipation of such a motion, they sought discovery from NYW and brought a motion to compel the production of certain documents related to the jurisdictional analysis that NYW had withheld on the basis of attorney-client privilege and/or the work product doctrine. ECF Nos. 312, 313. The Court

---

[1]  In an earlier letter, NYW indicated that a member of one of its parents is also a citizen of Florida, *see* ECF No. 300, at 1, of which Defendant Starneth LLC is a citizen, ECF No. 214, ¶ 17. This Florida member is not raised by any party here, so the Court will not address it further.

[2]  Even before the case was dismissed, New York Metropolitan Regional Center, L.P. II — the second plaintiff in the Third Amended Complaint — filed a new action in this Court pursuing a substantively identical breach-of-contract claim against Mammoet USA Holding, Inc. *See* Complaint, *New York Metropolitan Regional Center, L.P. II v. Mammoet USA Holding, Inc.*, No. 20-CV-9477 (JMF) (S.D.N.Y. Nov. 11, 2020), ECF No. 1.

denied that motion without prejudice, but indicated that if the Moving Defendants moved for sanctions, NYW would have to elect whether to invoke a reliance-on-counsel defense — thus waiving the attorney-client privilege and work product doctrine — or forego such a defense. ECF Nos. 318, 324. On January 29, 2021, the Moving Defendants brought the present motion for sanctions, seeking an award of attorney's fees. ECF No. 326; Defs.' Mem. 18 & n.20. After reviewing the Moving Defendants' motion, NYW concluded that it would oppose the motion "without invoking a reliance-on-counsel defense or otherwise waiving the attorney-client communication privilege or work product doctrine as to materials concerning the motion." ECF No. 333. The motion is now fully briefed and includes a short sur-reply filed by NYW that the Court considers "only to the extent that [it] responds to arguments raised by [the Moving] Defendants for the first time in their reply brief." ECF No. 347.

## DISCUSSION

Although "[s]anctions may be authorized by any of a number of rules or statutory provisions," *Sakon v. Andreo*, 119 F.3d 109, 113 (2d Cir. 1997), the Moving Defendants here rely only on the Court's inherent authority. Sanctions imposed pursuant to a court's inherent authority can "be made against an attorney, a party, or both," *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986), but the Moving Defendants seek sanctions against only NYW, not its former or current counsel, *see* Defs.' Mem. 1, 3. A federal court's inherent authority to impose sanctions stems from its need "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases," and "must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991) (internal quotation marks omitted). It provides that "a court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45-46 (internal quotation marks omitted). "The

5

imposition of sanctions pursuant to a court's inherent authority is . . . discretionary," but courts are cautioned to do so "only in rare circumstances." *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020).

"In order to impose sanctions pursuant to its inherent power, a district court must find that: (1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay." *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143 (2d Cir. 2012) (internal quotation marks omitted). "[C]lear and convincing evidence of bad faith is a prerequisite to an award of sanctions under the court's inherent power." *Yukos Cap.*, 977 F.3d at 235; *see also Wilson v. Citigroup, N.A.*, 702 F.3d 720, 724 (2d Cir. 2012) (per curiam) (requiring "clear evidence that the challenged actions are entirely without color and are taken for reasons of harassment or delay or for other improper purposes" (cleaned up)). The bad-faith requirement has been interpreted "restrictively" so as "to ensure that fear of an award of attorneys' fees against them will not deter persons with colorable claims from pursuing those claims." *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (per curiam) (cleaned up) (citing cases); *see also Mackler Prods. v. Cohen*, 146 F.3d 126, 128 (2d Cir. 1998) (describing as "troublesome" the fact that the "trial court may act as accuser, fact finder and sentencing judge"). If sanctions are imposed, the Second Circuit demands "a high degree of specificity in the factual findings" of the district court. *Dow Chem. Pac. Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 344 (2d Cir. 1986).

Applying these standards here, the Court is compelled to deny the Moving Defendants' motion for sanctions, troublesome as NYW's error was. That is because even assuming *arguendo* that NYW's assertion of diversity jurisdiction was "without a colorable basis," the Moving Defendants have not proved, let alone by clear-and-convincing evidence, that the

assertion was made "in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay." *Enmon*, 675 F.3d at 143 (internal quotation marks omitted). Notably, the Moving Defendants concede that they are unable to identify any improper purpose — by inference or otherwise — that motivated NYW's error. ECF No. 339 ("Defs.' Reply"), at 10. Instead, they rely solely on the gravity of the error itself to support an inference of bad faith. Defs.' Mem. 17-18. But given the complexity of NYW's membership, the Court cannot say that the assertion of diversity jurisdiction was "so completely without merit as to require the conclusion that [it] must have been undertaken for some improper purpose." *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999) (internal quotation marks omitted); *see Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 369 (2d Cir. 2021) (holding that a court's focus when evaluating the propriety of sanctions should not be on the "effect of the misrepresentation" at issue, but rather on "the motive behind it"); *Sierra Club v. U.S. Army Corps of Eng'rs*, 776 F.2d 383, 390 (2d Cir. 1985) (noting that "neither meritlessness alone nor improper purpose alone will suffice" to support an award of attorney's fees under the Court's inherent powers). That is, the record gives no indication that NYW's error, although serious and consequential, was anything more than an "honest" mistake. *Gal v. Viacom Int'l, Inc.*, 403 F. Supp. 2d 294, 308 (S.D.N.Y. 2005) (Rule 11 sanctions case). It follows that the Court cannot conclude, with "a high degree of specificity," that NYW acted in bad faith. *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009).

The Moving Defendants cite authority suggesting that a court need not identify a "specific[] . . . improper purpose" in order to impose sanctions. *See* Defs.' Mem. 17 n.19 (quoting *Craig v. UMG Recordings, Inc.*, No. 16-CV-5439 (JPO), 2019 WL 2992043, at *2 (S.D.N.Y. July 9, 2019) (imposing sanctions pursuant to 28 U.S.C. § 1927)). But *Craig* is

distinguishable. In *Craig*, Judge Oetken sanctioned the notorious Richard Liebowitz for filing a meritless motion to disqualify an expert, "[w]ith the full knowledge" that a necessary element of the motion was lacking. *Craig v. UMG Recordings, Inc.*, 380 F. Supp. 3d 324, 339 (S.D.N.Y. 2019), *reconsideration denied*, 2019 WL 2992043. On that basis, Judge Oetken was able to infer that Liebowitz was behaving in bad faith. Here, however, the Moving Defendants concede that they are unable to identify *any* bad-faith motive for NYW's error, and there is no basis to infer that the jurisdictional error was anything other than a good-faith mistake. In fact, NYW's situation is more analogous to that of the *client* in *Craig*, whom Judge Oetken declined to sanction absent "any particularized showing of bad faith" and who, as a "layperson," "lack[ed] the legal acumen to assess the viability of [the] . . . motion under the law" and "may not have known that the motion was legally colorless before agreeing to its filing." *Id.*

The remaining authorities that the Moving Defendants cite all involved facts significantly different from and more egregious than those here. Unlike this case, many involved misconduct before the court itself, *see, e.g.*, *New York v. Operation Rescue Nat'l*, 80 F.3d 64, 72 (2d Cir. 1996) (affirming an inference of bad faith where the attorney "insisted on viewing an entire hour-length videotape" during a hearing, "even though there was no relevant matter on the tape that was not cumulative of its first fifteen minutes" and the attorney "had several prior opportunities to view the tape outside of court"); *Dux S.A. v. Megasol Cosm. GmbH*, No. 03-CV-8820 (RO), 2006 WL 44007, at *2 (S.D.N.Y. Jan. 9, 2006) (involving, *inter alia*, a party's "troubl[ing]" failure to bring two "highly relevant" foreign court decisions to the court's attention), or gross legal errors, *see, e.g.*, *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 116 (2d Cir. 2000) (finding an inference of bad faith where a debtor "clearly lacked standing to challenge [a] sale"). Had NYW alleged that it was a California citizen and — notwithstanding

8

that allegation — concluded that there was diversity jurisdiction, the Court would be more inclined to sanction NYW (or its counsel). But NYW's error was factual in nature and sprung from its complex, multi-leveled membership. The Moving Defendants cite no authority supporting an inference of bad faith in such a situation. Even those cases most analogous to NYW's — where a party raised a claim for which an otherwise necessary factual predicate was absent — involved at least some evidence from which it could be inferred that the sanctioned party raised the claim *knowing* about the absent factual predicate. *See, e.g.*, *id.* (noting, *inter alia*, that the attorney made a claim predicated on a bankruptcy trustee's failure to attempt to collect from debtors where such an allegation was openly contradicted by a "record . . . of which [he] must have been aware"); *Craig*, 380 F. Supp. 3d at 339 (finding an inference of bad faith where an attorney made a motion to disqualify an expert "[w]ith the full knowledge" that a necessary element for his motion to succeed was missing).

To be sure, there is a strong case to be made that NYW was negligent or even reckless in alleging its citizenship. Although neither Houlihan Lokey nor the two foreign investors were listed in the original operating agreement of New York Wheel LLC — the managing member of NYW Investor, *see* ECF No. 337-1 — it is clear from the face of *NYW Investor's* operating agreement that Houlihan Lokey and the two foreign investors were members of NYW Investor, *see* ECF No. 328-5, at 27-28. Moreover, that operating agreement lists members with addresses in Guernsey, Cyprus, Connecticut, Illinois, Maryland, Massachusetts, and Texas. *See id.* at 27-29. These addresses are not themselves proof of citizenship, but they should have prompted a reasonable inquiry into the citizenship of NYW Investor's members. Simple searches of public records would have revealed to NYW that its membership went beyond New York and New Jersey citizens. *See, e.g.*, ECF No. 328-6; ECF No. 328-7; ECF No. 328-10; ECF No. 331-1.

Making matters worse, as the Moving Defendants point out, at the time this suit was originally filed, the CEO of NYW was himself also a director of one of NYW Investor's foreign members. Defs.' Mem. 5; ECF No. 328-8, at 3. In short, NYW did not exercise due diligence when making (and then continuing to repeat) the allegations about its citizenship.

But this is not enough to support a finding of bad faith. Although the Second Circuit has created an exception to the bad-faith requirement for cases of "a lawyer's negligent or reckless failure to perform his or her responsibility as an officer of the court," *United States v. Seltzer*, 227 F.3d 36, 41 (2d Cir. 2000) (addressing sanctions imposed on an attorney for tardiness in returning to court for a jury verdict), the exception does not extend to instances where the "conduct . . . took place during litigation and was taken on behalf of the client," *Laface v. E. Suffolk BOCES*, No. 2:18-CV-1314 (ADS) (AKT), 2019 WL 4696434, at *5 (E.D.N.Y. Sept. 26, 2019), or — by extension — actions taken by a client in pursuit of its own interests. Thus, NYW's negligence or recklessness in failing to properly conduct its jurisdictional analysis does not support a showing of bad faith. That is all the more true in light of the fact that it was NYW (albeit through counsel and on the eve of discovery, which might have revealed its membership) that *sua sponte* first brought its error to the Court's attention. *See* ECF No. 298, at 4. Taken together, then, the Moving Defendants fail to demonstrate NYW's bad faith by clear-and-convincing evidence.[3]

---

[3] The Moving Defendants fault NYW for failing to put forth evidence to "support[] any of the arguments, suggestions or speculations put forward in its brief" and asks the Court, on that basis, to draw an adverse inference — namely, that if NYW had offered such evidence, it would have been unfavorable to its position. Defs.' Reply 2. The Court declines to do so. NYW plausibly explains that it did not "submit[] declarations from its principals . . . because any sworn statement of substance would likely trigger an argument by [the Moving] Defendants that the privilege has been or needs to be waived for the sworn statement to be credited." ECF No. 334 ("Pl.'s Opp'n"), at 5 n.1. And because NYW elected to forego a reliance-on-counsel defense, ECF No. 333, it is entitled to invoke the attorney-client and related privileges. Drawing an

**CONCLUSION**

For the foregoing reasons, the Moving Defendants' motion for sanctions is DENIED. One final housekeeping matter remains. The Court granted the parties leave to file certain documents in connection with the motion under seal pending a decision on the underlying motion. *See* ECF Nos. 330, 343. It is well established that filings that are "relevant to the performance of the judicial function and useful in the judicial process" are considered "judicial documents" to which a presumption in favor of public access attaches. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (internal quotation marks omitted). Assessment of whether the presumption in favor of public access is overcome must be made on a document-by-document basis, *see, e.g.*, *Brown v. Maxwell*, 929 F.3d 41, 48 (2d Cir. 2019), and the mere fact that a court does not rely upon a document in adjudicating a motion does not remove it from the category of "judicial documents," *id*. at 50-51. Finally, the mere fact that information is sealed or redacted by agreement of the parties is not a valid basis to overcome the presumption. *See, e.g.*, *United States v. Wells Fargo Bank N.A.*, No. 12-CV-7527 (JMF), 2015 WL 3999074, at *4 (S.D.N.Y. June 30, 2015). That is, a party must demonstrate reasons to justify sealing or redaction separate and apart from a private agreement to keep information confidential.

Accordingly, any party that believes, in light of the foregoing principles, that any materials currently under seal or in redacted form should remain under seal or in redacted form is ORDERED to show cause in writing, on a document-by-document basis, why doing so would be consistent with the presumption in favor of public access no later than **two weeks from the date**

---

adverse inference against NYW in such circumstances would be inappropriate. *See*, e.g., *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 226 (2d Cir. 1999), *abrogated on other grounds by Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418 (2003); *In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2015 WL 8130449, at *3 (S.D.N.Y. Dec. 3, 2015).

**of this Opinion and Order**.  Proposed redactions should be "narrowly tailored" to achieve the aims that justify sealing.  *See, e.g.*, *Brown*, 929 F.3d at 47 (internal quotation marks omitted).  Finally, each party shall ensure that all sealing and redaction requests are made in accordance with Rule 7 of the Court's current Individual Rules and Practices in Civil Cases (and the District's ECF Rules and Instructions, the relevant parts of which were amended in 2020).  If, by the deadline, no party contends that a particular document should remain under seal or in redacted form, then the parties shall promptly file that document publicly on ECF.

    The Clerk of Court is directed to terminate ECF No. 326.

    SO ORDERED.

Dated: June 29, 2021
       New York, New York

                                                    JESSE M. FURMAN
                                              United States District Judge